**Gordon FORBAU, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45956.**

Court of Criminal Appeals of Texas.

March 28, 1973.

Rehearing Denied April 18, 1973.

---

1. See Perkins v. State, Tex.Cr.App., 433 S.W.2d 712, on the question of proper predicate for State to impeach its own witness.

Clifford W. Brown, Lubbock, for appellant.

Otis C. Shearer, Booker, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

JACKSON, Commissioner.

Appellant was convicted by a jury on his plea of not guilty of the offense of aggravated assault on a peace officer in the lawful discharge of his duty, under Art. 1147(1), Vernon's Ann.P.C.; the punishment, a fine of $100 and 30 days probated.

Briefly stated the facts are that on Halloween night, October 31, 1971, in the town of Higgins, appellant and four other young men were on the public streets yelling in concert, "Pig, pig, pig." Later, the deputy followed them, and they were whistling, laughing and calling loudly, "Here dog, Calvin, come on." The deputy sheriff alleged to have been assaulted was named Calvin Babitzke. Appellant's evidence showed that he had a dog named Calvin, which he claimed he was calling at the time.

Deputy Babitzke confronted the boys and told them they were under arrest, placed his hand on appellant's shoulder, which he explained that he ordinarily did as a gesture so that the person involved would know that he was under arrest.

The deputy sheriff had no warrant but attempted to arrest appellant because of his loud and boisterous conduct, apparently under the provisions of Art. 474, Sec. 1(1), V.A.P.C. He told them they were going to Lipscomb (the county seat) for disturbing the peace. Appellant jerked back; Officer Babitzke took hold of his arm; appellant continued violently jerking back and was kicking. They both fell down and the deputy then released him. Mike McKee, who was assisting the officer, came forward and they both held appellant, who said he wanted to fight Babitzke. Officer Babitzke refused to take off his gun and badge and to fight appellant, and then permitted appellant and his companions to go on rather than to further aggravate the matter.

Appellant testified, the effect of which was that they had not used any loud language, were talking and laughing and whistling for his dog, but had stopped calling for this dog when Babitzke stepped out and said, "Yeah, here I am," then said, "Gordon, I am tired of your smart aleckness," and he then came and grabbed appellant by the arm and spun him around and they both fell to the ground. He said McKee also had hold of him, and Babitzke said, "Let him go," then said, "Do you want to fight," whereupon appellant said he told him if he would take off his badge, because he did not want to fight an officer. No fight ensued, and the boys left.

Taken as a whole, the evidence raised the issue that if appellant used or attempted to use unlawful violence upon the officer, he did so in an effort to free himself from the restraint of an unlawful arrest. The court so ruled when he gave the following charge to the jury:

"You are further instructed that any person has the right of self-defense when confronted with an unlawful arrest and may resist such an arrest with all force as necessary to defend himself. The jury is instructed to consult the above paragraph III. to determine what is an unlawful arrest."

Appellant duly filed written objections to the charge in which he requested the court to charge:

"And if the jury believes from this evidence that it reasonably appeared to the defendant, viewed from the standpoint of the defendant at the time, that it was necessary to use the force which he used in order to prevent such illegal arrest, that they should find the defendant not guilty."

The court overruled this objection and refused to so charge.

Appellant, for his fifth ground of error says:

"The court erred in failing to charge upon the right of the appellant to resist an unlawful arrest, and in doing so to use all such force as he believed necessary to defend himself, viewed alone from the standpoint of the appellant at the time."

In failing to respond to this request, the trial court erred.

The right to defend against an unlawful deprivation of liberty is but a part of or an extension of the law of self defense. It has too long been the law of this State to require the citation of author-

ities that in judging the right of self defense the situation must be viewed from the standpoint of the defendant at the time, and the jury must not be allowed to decide such right as the jury now views it. The words of the charge, "may resist such an arrest with all force necessary to defend himself," permitted the jury to view the matter from the jury box, and not to base their verdict as it appeared to appellant, viewed from his standpoint at the time.

A general statement of the right to resist unlawful arrest appears in 6 Tex.Jur.(2d), pg. 194, Sec. 52, where it is stated:

"Although every citizen has a duty to submit to lawful arrest, he is not required to submit to an unauthorized or unlawful arrest.

"A person who is threatened with the commission of an offense that is classed as an 'offense against the person,' such as unlawful arrest or false imprisonment, has two remedies: he may choose to appeal to the law for redress by application for habeas corpus or other appropriate remedy, or he may resort to his right of resistance. If he chooses to resist, he may, however, use only such force as is reasonably necessary to prevent the arrest or to free himself from the illegal restraint. The question as to how far a person may go in resisting an illegal arrest presents a field the limits of which are not exactly defined. On one hand due regard must be had to the preservation of liberty and on the other to the protection of officers of the law. In any event a person has a right under the law, and under the constitutional provision that no citizen is to be deprived of his liberty without due process of law, to extricate himself from an illegal arrest and to use such force and such means as are available to him at the time and as appear to him to be necessary to obtain that end."

Ely v. State, 139 Tex.Cr.R. 520, 141 S. W.2d 626, at page 628, uses these words:

"Appellant had a right under the law and the Constitution to extricate himself from the illegal arrest and to use such force and such means as were available to him at the time and as appeared to him to be necessary to attain that end."

We quote from Montgomery v. State, 43 Tex.Cr.R. 304, 65 S.W. 537:

"When he (the officer) approached defendant, it was his duty to notify him that he arrested him and of the capacity in which he was acting. In the absence of such notice, defendant would have the right to resist such unlawful arrest, and use whatever force was necessary to accomplish such resistance. Of course, in doing so he must not use any more force than is necessary, viewed from appellant's standpoint at the time of said resistance."

In Cline v. State, 150 Tex.Cr.R. 586, 204 S.W.2d 512, it was said:

"If the arrest or attempted arrest was illegal, then the law gave appellant the right to resist by the use of force such illegal arrest, taking care not to use greater force than appeared to him, viewed from his standpoint at the time, to be necessary to prevent such arrest."

We do not mean to hold or imply that this court finds the arrest to be illegal as a matter of law, but only that, since the issue was raised, the charge should have given the jury the rule that the actions of appellant must be viewed from appellant's standpoint at the time.

We sustain appellant's ground of error number five, and do not consider it necessary to rule on other grounds of error.

The judgment is reversed and the cause is remanded.

Opinion approved by the Court.