**Muhammad Lutharius YOUNG,
Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–97–00017–CR.**

Court of Appeals of Texas,
Texarkana.

Dec. 4, 1997.

**13.** *Russell v. State,* 665 S.W.2d 771, 776 (Tex. Crim.App.1983).

Sydney Young, Paris, for appellant.

Kerye Ashmore, Lamar County District Attorney, Karla R. Baugh, Asst. District Attorney, Paris, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Muhammad Lutharius Young appeals from a conviction for attempted murder, with an affirmative finding of a deadly weapon. A jury found Young guilty, and the trial court assessed punishment at twenty years' imprisonment.

Young appeals his conviction in two points of error. First, Young contends that his trial counsel rendered ineffective assistance of counsel. Specifically, Young contends that his trial counsel erred in failing to present the defense of necessity and in failing to object to inadmissible evidence. Second, Young contends that the evidence is legally and factually insufficient to show that he had the specific intent required for attempted murder.

There is evidence that, on August 1, 1996, Deputy Sheriff Scott Roebuck attempted to stop a vehicle after it failed to dim its headlights. Roebuck followed the car, which pulled into the driveway and backyard of Don Hilliard's home. As Roebuck pulled up to the house, he saw someone running out of the now-parked car. The remaining occupant of the parked car, Elijah Woods, identified the driver as "Lutharius." Roebuck looked for the driver, but could not find him. Brad Hilliard, Don Hilliard's son, drove up to the house. Roebuck informed Brad of the situation, and Brad led him inside to his father. The officer and the Hilliards then searched the home and surrounding buildings. Finding no one, Roebuck left.

Soon after, Brad Hilliard saw a black man walking down the road next to their home. Although Hilliard had not been given a description of the driver, he assumed the man was the suspect for whom the police were looking. Brad and Don Hilliard got into their truck, approached the walking man Young and told him to get in the truck. Young complied. The testimony is conflicting as to whether Don Hilliard told Young the reason for stopping him and ordering him into their truck.

Don Hilliard initially drove toward town. Hilliard testified he soon changed directions and drove toward Lake Gibbons, where he believed police officers to be. Young mentioned to the Hilliards that he had friends at Lake Gibbons and seemed comfortable while they were going toward the lake. Hilliard changed directions again when he passed Officer Rick Moncibiaz's police car going in the opposite direction and attempted to flag down the police car. Hilliard testified he told Young he was "taking him to the sheriff that we just passed." This, according to the Hilliards, made Young very nervous. The Hilliards claim that Young began to threaten them, told them to stop the car or he would rip out the transmission, said that he didn't care about his life or their lives, and said that he would kill them all if they did not stop the truck and let him out. Don Hilliard testified that when he did not comply with Young's demands, Young put his foot on the gas pedal and grabbed the steering wheel. Young testified to the contrary that he was afraid for his life and that he tried to jump out of the truck by reaching for and grabbing the door. The truck left the road and crashed into the gas pumps of a convenience store. Don Hilliard pulled Young out of the truck, and Young ran down the road. He was picked up by a police officer and taken to a hospital. The Hilliards were also taken to a local hospital.

Approximately one month after the incident, on August 26, 1996, Young was arrested and charged with the attempted murders of Don and Brad Hilliard. Young was tried on February 24, 1997.

## Ineffective Assistance of Counsel

In his first point of error, Young contends that his trial counsel rendered ineffective assistance such that Young was deprived of a fair trial. Young asserts that the first and most significant error was counsel's failure to request an instruction on the defense of necessity. Other errors asserted consist of trial counsel's failure to object to inadmissible evidence.

■ In determining whether counsel was ineffective, the reviewing court must look at the trial as a whole and not at isolated incidents.[1] The standard for testing claims of ineffective assistance of counsel was announced in *Strickland v. Washington*.[2] Under *Strickland*, a claimant must prove that counsel's representation so undermined the "proper functioning of the adversarial process that the trial cannot be relied on having produced a just result."[3] The appellant must prove: (1) that his counsel's representation was deficient; and (2) that the deficient performance was so serious that it prejudiced his defense.[4] The review of counsel's representation is highly deferential and indulges a strong presumption that counsel's conduct falls within a wide range of reasonable representation.

### Defense of Necessity

■ Failure by counsel to request a jury instruction can render his assistance ineffective if, under the facts of the case, it would have been error for the trial court to refuse such an instruction, had one been requested.[5] A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief.[6] The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge.[7] The defendant, however, bears the burden of overcoming the presumption that counsel's decision not to request the instruction could be considered sound trial strategy.[8]

Necessity is a defense if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.[9]

Young asserts that he was entitled to an instruction on necessity because the Hilliards unlawfully arrested him. He contends that the Hilliards were holding him "captive" without authority, which caused him to be confused and frightened for his safety. The State's brief did not respond to this contention.

■ Under the Texas Code of Criminal Procedure, a private citizen has the right to make an arrest under certain limited circumstances:

(a) A peace officer *or any other person*, may, without a warrant, arrest an offender when the offense is *committed in his presence or within his view*, if the offense is one classed as a felony or as an offense against the public peace.[10]

1. *Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim. App.1985).

2. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

3. *Id.* at 686, 104 S.Ct. at 2063–64.

4. *Id.*

5. *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim.App.1992).

6. *Thomas v. State*, 678 S.W.2d 82, 84 (Tex.Crim. App.1984).

7. *Id.*

8. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Waddell v.* State, 918 S.W.2d 91, 93 (Tex.App.— Austin 1996, no pet.) (citing *Jackson v. State*, 877 S.W.2d 768, 771–72 (Tex.Crim.App.1994)).

9. TEX. PENAL CODE ANN. § 9.22 (Vernon 1994).

10. TEX.CODE CRIM. PROC. ANN. art. 14.01(a) (Vernon 1977) (emphasis added).

A private person may make an arrest only at the time he sees the actual offense being committed.[11] A private citizen may not see an offense and then later pursue the guilty party in order to apprehend him for the police.[12] Direct observance of the commission of the crime has been interpreted as requiring the private citizen to observe enough of the situation to establish probable cause a crime *is being* committed.[13]

An arrest occurs when a person's liberty of movement is restricted or restrained.[14] A person has the right to use all force necessary to extricate himself from an illegal citizen's arrest.[15] In *Forbau v. State*,[16] the Court of Criminal Appeals stated that, although every citizen has a duty to submit to lawful arrest, he is not required to submit to an unauthorized or unlawful arrest.[17] A person who is threatened with an unlawful arrest or false imprisonment may resort to his right of resistance.[18] "[A] person has a right ... to extricate himself from an illegal arrest and to use such force and such means as are available to him at the time and as appear to him to be necessary to obtain that end." [19]

The right to defend against an unlawful deprivation of liberty is but a part of or an extension of the law of self-defense.[20] The use of force is not justified to resist an arrest that the actor knows is being made *by a peace officer*, even though the arrest is unlawful, unless greater force than necessary is being used by the peace officer.[21] However, that was not the case here, as the arrest was not made by a peace officer, but by private citizens.

It is disputed whether Young knew the reason the Hilliards wanted him in their truck. Don Hilliard testified to the following exchange with Young prior to Young getting in the truck:

> And that's when I said, young man, get in my truck. He said, no, I'm not going to get in your truck. I said, young man, get in my truck. And he said, no, I'm not getting in your truck. And I said, young man, you can get in my truck the easy way or the hard way but I said, young man, you're going to get in my truck.

Brad Hilliard testified that his father asked Young if he was "the young man that the police were looking for." Young testified that the Hilliards "threw" him in the truck. He also testified that he believed the Hilliards were "trying to do something" to him that he "didn't appreciate" and that he "was scared." Young testified that the Hilliards did not tell him where they were taking him or to whom they were taking him, and he was told to "shut up" when he asked. When Hilliard turned the truck in the direction *away* from the lake, Young testified that he was "scared," that he believed his "life was in danger," and that he had "never been in a situation like that."

Young also explained his actions leading up to the collision with the gas pumps. He testified that he asked to be let out of the truck and then tried to jump out of the truck. He stated that he "[j]ust reached over there and tried to grab the door and open the door and jump out the truck." He justified these actions by saying that he was trying "to save [his] life" and that he believed his life was in danger "from them." According to Young, as he reached for the door, one of the Hilliards grabbed Young, causing his arm to hit the steering wheel. Young stated that it was this struggle which caused the truck to leave the road, go through a ditch and crash into

11. *Turner v. State*, 901 S.W.2d 767, 771 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd)

12. *Id.*

13. *McGuire v. State*, 847 S.W.2d 684, 686 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

14. *Turner*, 901 S.W.2d at 771 (citing *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Crim.App. 1991)).

15. *Lester v. State*, 498 S.W.2d 927, 931 (Tex. Crim.App.1973) (Odom, J. dissenting).

16. 492 S.W.2d 516 (Tex.Crim.App.1973).

17. *Id.* at 518.

18. Id., quoting 6 Tex.Jur 2d § 52 (1980).

19. *Id.*

20. *Forbau*, 492 S.W.2d at 518.

21. Tex. Penal Code Ann. § 9.31(b)(2), (c) (Vernon 1994 & Supp.1997), § 38.03(a)(b) (Vernon 1994).

the gas pumps.[22] He testified that his foot was never on top of Hilliard's. Young stated that, through the event, he was "just thinking about getting away from them and trying to get somewhere safe."

In *Vasquez*, the defendant, on trial for possession of a firearm by a felon, testified that he was in danger of being killed, that he had just escaped from being kidnaped by those trying to kill him, and that he had been able to take a gun from one of his kidnapers prior to the escape.[23] Vasquez's trial counsel did not request a special instruction on necessity. The Court held that "[c]ounsel should have recognized that appellant's testimony was sufficient to raise the defense, and that appellant had nothing to lose by requesting a defensive instruction. Without giving the jury an opportunity to consider a defense, conviction was ... 'a foregone conclusion.' "[24]

The State argues that Young was not entitled to a defense of necessity because he did not admit to the offense. The plea of necessity goes more to the defendant's state of mind than the general plea of self-defense.[25] A plea of necessity requires that the actor reasonably believe his conduct is immediately necessary to avoid imminent harm. Although there is a conflict as to specifically what happened at the time of the wreck, Young does not deny that his efforts to escape the vehicle caused the wreck, but states a different version of how the wreck happened. Both versions of the events indicate that Young's attempt to escape from the vehicle was the act in question. His variation in testimony from his accuser does not deny his causation of the collision that led to the injuries, and is not such a denial of the occurrence that would have negated the jury having the opportunity to consider an instruction on necessity.

The State argues that Young's counsel was not ineffective in that he employed the sound trial strategy of creating reasonable doubt by attacking the State's evidence regarding the intent to cause harm. The State also argues that the defense of necessity conflicts with the defense presented at trial. However, a defendant is entitled to a charge on a defensive theory regardless of whether the evidence supporting the defensive theory is contradicted.[26]

Young's testimony supports the possibility that he was trying to free himself from an unlawful arrest. Young's counsel's failure to request an instruction on necessity amounted to ineffective assistance of counsel.

Under the second prong of *Strickland*, the appellant must show that his counsel's deficient performance prejudiced his defense such that the trial cannot be relied on having produced a just result.[27] The failure to instruct the jury on necessity precluded the jury from factoring in Young's testimony that he was afraid for his life. As in *Vasquez*, such failure "undermines our confidence in the conviction sufficiently to convince us that the result of the trial might have been different had the instruction been requested and given."[28]

Young contends that a number of additional errors amounted to ineffective assistance of counsel, including trial counsel's failure to object to 1) the State's leading of witnesses who were not hostile witnesses, 2) the State's introduction of extraneous offenses, and 3) hearsay and nonresponsive evidence. Trial counsel's failure to request an instruction on the defense of necessity is dispositive on the issue of ineffective assistance. Therefore, we do not address these points.

We sustain Young's first point of error.

### Legal & Factual Insufficiency of Evidence

Young argues that the evidence is legally and factually insufficient to prove that he had

---

**22.** Young testified:
   ... Well, when I reached over, his arm came around like that and this part of the arm hit the steering wheel and the steering wheel went that way and that made the truck go that way.

**23.** *Vasquez*, 830 S.W.2d at 950.

**24.** *Id.* at 951.

**25.** *Auston v. State*, 892 S.W.2d 141 (Tex.App.—Houston [14th Dist.] 1994, no pet.).

**26.** *Thomas*, 678 S.W.2d at 85.

**27.** *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

**28.** *Vasquez*, 830 S.W.2d at 951.

the specific intent to cause the death of Brad Hilliard.

The facts are undisputed which show that the detention of Young by the Hilliards was unlawful. Because there was no instruction on the issue of necessity, the jury was unable to make a factual determination on this key issue. Therefore, we do not address Young's sufficiency grounds.

This case is reversed and remanded to the trial court for a new trial.