**Enrique Lopez ANDRADE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–96–01407–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 15, 1999.

Discretionary Review Refused Nov. 17, 1999.

Brian D. Lacour, Houston, for appellant.

Carmen Castillo Mitchell, Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices ANDERSON and HUDSON.

## CORRECTED OPINION

J. HARVEY HUDSON, Justice.

Appellant was indicted for the felony offense of burglary of a habitation. After a jury trial, appellant was found guilty and the trial court sentenced him to sixteen years in the Institutional Division of the Texas Department of Criminal Justice. Appellant challenges his conviction alleging the trial court erred in: (1) denying appellant's motion to suppress; (2) ruling appellant's expert was not qualified to provide an opinion; and (3) failing to make specific findings of fact and conclusions of law. We affirm.[1]

---

1. The opinion originally released on this date was afflicted with significant omissions and formatting errors due to computer/clerical errors.

The facts are as follows: James Johnson, the complainant, arrived home from work at approximately 12:05 p.m. on May 22, 1996, to find his bedroom window shattered and his VCR and telephone missing. Recalling that he had noticed a Hispanic male walking along his property line as he drove up to his house, Johnson ran back outside to question the man only to find an empty street. Later that day, Johnson found his VCR and telephone hidden amongst the bushes in his yard. The following morning, Johnson spotted appellant digging through the same bushes and carrying a black bag. Recognizing appellant as the same Hispanic male he had noticed outside of his house immediately before he discovered the burglary, Johnson apprehended appellant and, with the help of a neighbor, detained him until the police arrived.

Officer Ron Filer of the Baytown Police Department testified he picked appellant up at Johnson's house on May 23, 1996, the day after the burglary. Appellant initially claimed he was merely looking for aluminum cans, but no cans were found in appellant's bag. After reading him his *Miranda* warnings, Filer escorted appellant to the police station where he transferred custody of the prisoner to Detective Robert Huron.

Detective Huron testified he had dealt with appellant in the past and was aware he was blind in one eye. Detective Huron said he read appellant his rights from a standard "Advice of Rights" form. Huron also provided appellant with a written form containing those same admonitions. Appellant acknowledged that he understood his rights and signed the form. Huron then proceeded to question appellant about the burglary and asked appellant to make a statement. Detective Huron testified he then pulled up a voluntary written statement form on his computer, which had the rights printed at the top and bottom. He read appellant his rights again and appellant gave an oral statement confessing to the burglary. Detective Huron typed appellant's statement into the computer as appellant was giving it. When it was complete, he handed appellant a copy of the statement to verify its accuracy. Detective Huron did not read the statement to appellant, but testified that appellant indicated he both read and understood the statement. Officer Filer and Officer Kelly Anderson were called in to witness appellant's signature. Detective Huron further testified that appellant was not threatened or promised anything in return for making such statement and did not complain at the time that he could not see to read the statement.

Appellant testified that when he was apprehended, he was in Johnson's neighborhood walking his dog; he claimed he had tied his dog to a meter so he could rest when Johnson came out of his house, accused appellant of burglary, and told him not to move. Thereafter, the police arrived, handcuffed appellant, and put him in a patrol car. In response to his questions concerning what would happen to his dog, appellant claims the police told him the dog would be taken to the pound. Appellant says he then agreed to sign a form to release his dog from the pound. He claims he thought he was signing that form when he signed the statement confessing to the burglary. Appellant's principal argument is that because of poor eyesight he involuntarily signed the statement, unaware of what it contained. Appellant concedes he signed his *Miranda* rights voluntarily. Those rights were read aloud to him.

At trial, appellant filed a motion to suppress his statement claiming it was (1) the fruit of an unlawful arrest and (2) involuntary. In an attempt to prove that he did not sign the statement voluntarily, appellant provided the court with his account of the facts and produced his medical records and the testimony of Kathleen Saathoff, a certified orthoptist at Hermann Eye Center, as evidence of his poor eyesight. Saathoff testified appellant has one glass eye and has suffered severe trauma to his re-

maining eye, making it impossible for him to read a document or page of print. In addition, appellant's wife, Mary Andrade, testified appellant's eyesight was impaired to such an extent that he could not read without reading glasses.

In rebuttal, the State offered the testimony of Officers Filer and Huron, and argued Saathoff was not qualified to give an opinion regarding appellant's vision. The court, upon considering the evidence, denied appellant's motion to suppress and allowed appellant's oral statement and waiver of rights to be admitted into evidence over appellant's objection.

At trial, appellant's medical records were admitted, but Saathoff's testimony was restricted to appellant's vision problems. She was not allowed to give her opinion as to what appellant could or could not see.

In his first point of error, appellant complains his statement should have been suppressed because it was obtained as the result of an unlawful arrest. Appellant contends his arrest was unlawful because Johnson arrested him without the proper authority.

■■■ The appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The appellate court should afford the same amount of deference to trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* The appellate courts may review de novo "mixed questions of law

and fact" not falling within this category. *Id.*

■■ Appellant argues that after being accosted by Johnson, he was not free to leave the scene and was effectively put under restraint by Johnson, constituting an arrest without a warrant.[2] Appellant claims this violated article 14.01 of the Texas Code of Criminal Procedure because the offense was not committed within Johnson's presence or view. *See Garner v. State,* 779 S.W.2d 498, 501 (Tex.-Fort Worth App.1990); *see also* TEX.CODE CRIM. PROC. ANN. Art. 14.01 (Vernon 1977).

■■■ It is a matter of deep public concern when one citizen assumes the responsibility of arresting another citizen. *See Browning v. Pay–Less Self Service Shoes, Inc.,* 373 S.W.2d 71, 75 (Tex.Civ.App.-Austin 1963, no writ).

> The liberty of the citizen is as important as the interests of society. In fact, it is one of the fundamental purposes proposed to be subserved by the organization of society and government. The law provides the instrumentalities by which the personal liberty of the citizen may be restrained, temporarily or permanently, in the interests of society, and these exact instrumentalities must be evoked in case it be sought to effect such deprivation.

*Gilbert v. State,* 78 Tex.Crim. 441, 181 S.W. 200, 202 (1915). Moreover, arrests made by private citizens are fraught with grave danger to the public tranquility, peace, and individual freedom. *See Browning,* 373 S.W.2d at 75. While a citizen may not ordinarily resist arrest made by a peace officer, even if it is unlawful, the same is not true of a citizen's arrest. *See Forbau v. State,* 492 S.W.2d 516, 518 (Tex.Crim.App.1973). The right to defend against an unlawful deprivation of liberty is but an extension of the law of

---

2. The Texas Code of Criminal Procedure provides that "A person is arrested when he has been actually placed under restraint or taken into custody by an officer or a person execut-

ing a warrant of arrest, or by an officer or person arresting without a warrant." TEX. CODE CRIM. PROC. ANN. art. 15.22 (Vernon 1977).

self-defense. *Id.* Although every citizen has a duty to submit to a *lawful* arrest, a person threatened by an unlawful or unauthorized arrest by a private citizen may use such force as is reasonably necessary to prevent the arrest or to free himself from the illegal restraint. *Id.*

Accordingly, the right of one citizen to arrest another citizen against his will is very limited. *See De Leon v. State,* 150 Tex.Crim. 391, 201 S.W.2d 816, 818 (1947). A person is authorized to make a citizen's arrest only if: (1) a warrant has been issued for the offender and the court has, by name, specifically authorized the citizen to take the offender into custody;[3] (2) a peace officer has commanded the citizen to assist him in the execution of a search warrant that also orders the arrest of the offender;[4] (3) the offender has stolen personal property, and the citizen is attempting to prevent the consequences of theft by seizing the property and the offender, if he can be taken, and taking them before a magistrate;[5] (4) the offender has committed a felony in his presence or view;[6] or (5) the offender has committed an offense against the public peace in his presence or view.[7]

Here, the record does not disclose whether appellant was arrested with or without a warrant. While we deem it unlikely that appellant's arrest was authorized by a warrant, in a motion to suppress hearing the movant has the initial burden of establishing a warrantless arrest. *See Russell v. State,* 717 S.W.2d 7, 9 (Tex. Crim.App.1986); *Blondett v. State,* 921 S.W.2d 469, 472 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). Under *Russell,* appellant could have met this burden by simply asking the witnesses if they had a warrant for the arrest. *See Russell,* 717 S.W.2d at 9–10. Because appellant did not meet his initial burden, the State never had to prove the arrest was authorized under an exception to the general warrant requirement. *Id.*

However, even if appellant had established that his arrest was accomplished without a warrant, we nevertheless find it was lawful under the facts presented here. Article 14.01 of the Code of Criminal Procedure authorizes a citizen to arrest an offender when a felony or an offense against the public peace is committed in his presence or view. The statute is limited by its terms to the time the offense is committed or while there is continuing danger of its renewal. *See Turner v. State,* 901 S.W.2d 767, 771 (Tex.App.-Houston [14th Dist.] 1995, pet. ref'd). In other words, "a private citizen may not see an offense and then *later* pursue the guilty party in order to apprehend him for the police." *Id.*

Here, appellant's criminal activities were apparently interrupted when Johnson returned home around midday on May 22, 1996. Appellant had taken a telephone and VCR from Johnson's house, but was forced to hide the stolen property in the shrubbery when Johnson pulled into the driveway unexpectedly. Johnson discovered the burglary and found the point of entry. He then ran outside and looked for the man he had seen walking along his property line. When he was unable to locate appellant, he returned to his yard and discovered his telephone and VCR hidden in the bushes. Because he needed to make repairs to his home, Johnson left for work early the next morning to obtain permission to take a day of vacation. Johnson completed the necessary paper work and returned home only to discover

---

**3.** *See* TEX.CODE CRIM. PROC. ANN. art. 15.01 (Vernon 1977).

**4.** *See* TEX.CODE CRIM. PROC. ANN. arts. 18.03 & 18.08 (Vernon 1977).

**5.** *See* TEX.CODE CRIM. PROC. ANN. art. 18.16 (Vernon 1977).

**6.** *See* TEX.CODE CRIM. PROC. ANN. art. 14.01 (Vernon 1977).

**7.** *Id.*

appellant was in his yard, searching through the bushes where the VCR and telephone had been left the day before. Because appellant renewed his attempt to steal Johnson's property, we believe Johnson was authorized to arrest appellant for an offense against the public peace.

An "offense against the public peace" or a "breach of the peace" is not statutorily defined. However, the Court of Criminal Appeals has approved the following definition:

> The term "breach of the peace" is generic, and includes all violations of the public peace or order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community; a disturbance of the public tranquility by any act or conduct inciting to violence or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet of the community. By "peace," as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns among its members. Breach of the peace is a common-law offense. It has been said that it is not a specific offense, yet it may be, and at times is, recognized as such by statute or otherwise; and only when so regarded will it be considered in this article.
>
> The offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet, of an invasion of the security and protection which the laws afford to every citizen, or of acts such as tend to excite violent resentment or to provoke or excite others to break the peace. Actual or threatened violence is an essential element of a breach of the peace. Either one is sufficient to constitute the offense. Accordingly, where means which cause disquiet and disorder, and which threaten danger and disaster to the community, are used, it amounts to a breach of the peace, although no actual personal violence is employed. Where the incitement of terror or fear of personal violence is a necessary element, the conduct or language of the wrongdoer must be of a character to induce such a condition in a person of ordinary firmness.

*Woods v. State,* 152 Tex.Crim. 338, 213 S.W.2d 685, 687 (1948).

■ In other words, to be a breach of the peace the act complained of must be one which disturbs or threatens to disturb the tranquillity enjoyed by the citizens. *See Head v. State,* 131 Tex.Crim. 96, 96 S.W.2d 981, 983 (1936). Conduct which has been found to be a breach of the peace includes: (1) driving while intoxicated;[8] (2) possession of a handgun;[9] (3) loud swearing or cursing in a public place;[10] (4) the unprovoked assault by a man upon a woman in a public place;[11] (5) throwing or swinging a beer bottle at another person;[12] (6) failing to stop and give information after a traffic accident;[13] and (7) criminal trespass upon fenced land containing livestock by one who had previously been asked to leave.[14]

■ Here, appellant returned to the scene of the crime to finish the offense,

---

**8.** See *Romo v. State,* 577 S.W.2d 251, 253 (Tex.Crim.App.1979); *McEathron v. State,* 163 Tex.Crim. 619, 294 S.W.2d 822, 823 (Tex. Crim.App.1956).

**9.** *See Turner,* 901 S.W.2d at 771.

**10.** *See Leache v. State,* 22 Tex.App. 279, 3 S.W. 539, 546 (1886).

**11.** *See Woods,* 213 S.W.2d at 688.

**12.** *See Knot v. State,* 853 S.W.2d 802, 805 (Tex.App.-Amarillo 1993, no pet.).

**13.** *See Crowley v. State,* 842 S.W.2d 701, 704 (Tex.App.-Houston [1 st Dist.] 1992, no pet.).

**14.** *See Dunn v. State,* 979 S.W.2d 403, 408–09 (Tex.App.-Amarillo 1998, pet. ref'd).

i.e., to obtain the fruits of the previous day's burglary. Johnson's window was still broken, his property was still vulnerable, and the perpetrator was determined to renew his unlawful enterprise. Under these circumstances, we find Johnson was authorized to arrest appellant for a breach of the peace. Accordingly, we find appellant's statement was not the result of an illegal arrest. Thus, the trial court did not abuse its discretion in denying the motion to suppress. Appellant's first point of error is overruled.

In appellant's second point of error, he complains his statement to police should have been suppressed because it was the result of an illegal detention by the police. We have already found that Johnson, not the police, arrested appellant. Johnson, with the help of his neighbor, physically restrained appellant and held him until police arrived. Thus, appellant was already in custody when the police took possession of appellant. Because the citizen arrest was lawful, the subsequent police detention was also lawful. Appellant's second point of error is overruled.

In his third point of error, appellant complains the trial court improperly limited the testimony of his vision expert, Kathleen Saathoff. Appellant offered Saathoff as an expert in low vision to testify that it would have been impossible for appellant to have read the statement signed by him in police custody.

The qualification of a witness to testify as an expert is a determination which rests largely within the discretion of the trial court. *See Penry v. State,* 903 S.W.2d 715, 762 (Tex.Crim.App.1995); *Sterling v. State,* 800 S.W.2d 513, 521 (Tex.Crim.App.1990); *Thomas v. State,* 915 S.W.2d 597, 600 (Tex.App.-Houston [14th] 1996, pet. ref'd). The court's decision to admit or exclude testimony will not be disturbed on appeal absent a clear showing of abuse of discretion. *See id.* Here, the court found Saathoff unqualified to testify as an expert on appellant's vision or to give an opinion regarding appellant's eyesight. Thus, Saathoff's testimony was limited to the diagnosis contained in appellant's medical records.

Appellant argues Saathoff was a qualified expert because she has been a certified orthoptist and low vision coordinator at Hermann Eye Center for thirty-two years. She is also certified to teach low vision education and has tailored programs for the visually impaired. However, on cross-examination by the State, it was discovered that Saathoff did not have a Bachelor's degree, a Master's degree, a Ph.D., nor an M.D. She had never testified as an expert. She had no personal knowledge of appellant, had not performed any tests on appellant, and her experience as an orthoptist only involved being a liaison between an opthamologist and the patient.

An expert is qualified to testify if the expert has special knowledge derived from the study of technical works, specialized education, practical experience or a combination of the above. *See Thomas,* 915 S.W.2d at 600 (citing *Clark v. State,* 881 S.W.2d 682, 698 (Tex.Crim.App.1994)). Texas Rule of Evidence 702 provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Tex.R. Evid. 702.

Appellant did not establish that Saathoff was qualified to testify as an expert. Accordingly, we find the trial court did not err in limiting Saathoff's testimony to summarizing and explaining appellant's records. As Saathoff explained to the jury, appellant sustained a penetrating injury to his remaining eye and although he retained the ability to see, his visual acuity was so impaired that he was considered to be legally blind. Because she had not conducted any tests upon appellant, we

agree with the trial court's conclusion that Saathoff was not qualified to offer an opinion on whether appellant could have read the statement signed by him at the police station. Appellant's third point of error is overruled.

■ In his fourth point of error, appellant contends the trial court's failure to make specific factual findings regarding the voluntariness of appellant's confession requires an abatement of appellant's appeal to permit the trial judge to make the required findings.

The Texas Code of Criminal Procedure requires the trial judge to enter a written order setting forth the specific factual findings that support its conclusion that the confession of defendant was voluntary. See TEX.CODE CRIM. PROC. ANN. Art. 38.22, § 6 (Vernon 1994); Douglas v. State, 900 S.W.2d 760, 761 (Tex.App.—Corpus Christi 1995, writ ref'd). Here, the trial court's findings were dictated into the record:

> [A]s to the statement made by the defendant in custody, I will find that he was given his warnings, did understand those warnings, that he did give up those rights and make a statement, and that it was voluntary and intelligently made.

Appellant claims the trial judge's findings were not specific enough to allow appellant to show error; specifically, appellant argues the trial judge should have considered his testimony concerning his belief that the statement he signed was a release form for his dog and the evidence that he could not read the form due to poor vision. Without factual findings on these specific matters, appellant argues he is restricted in his attempts to demonstrate error. See Douglas, 900 S.W.2d at 761.

We find the trial court impliedly rejected appellant's testimony that he did not read the statement before he signed it. Moreover, the trial court satisfied the requirements of article 38.22, section 6. See Lee v. State, 964 S.W.2d 3, 11–12 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd) (noting trial court's method of dictating findings into the record, rather than entering a separate order, complied with article 38.22, section 6). Appellant's fourth point of error is overruled.

■ In his fifth point of error, appellant complains his statement to police was improperly admitted into evidence because it was involuntary. As we previously stated, the appellate court should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. See Guzman, 955 S.W.2d at 89. The appellate court should afford the same amount of deference to trial court's rulings on mixed questions of law and fact if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. See id. At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. See King v. State, 831 S.W.2d 891, 893 (Tex. App.-Houston [14th Dist.] 1992, no pet.). When determining the voluntariness of a statement given by a criminal defendant, the court should consider the totality of the circumstances related to the giving of the statement. Id. at 894; see also TEX CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1994).

There are two factors that appellant argues render his statement involuntary: (1) his testimony that he signed the statement under the false impression the document was a release form for his dog, and (2) the evidence he could not read the statement as a result of poor vision. The trial court, however, found the officer's testimony, in addition to evidence that appellant retained a driver's license and had been seen driving without any apparent difficulties, was sufficient proof that the statement was voluntary. The trial court did not err in

admitting appellant's statement into evidence, and appellant's fifth point of error is overruled.

We affirm the trial court's judgment.