**Vickie Y. DRAKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–02–01228–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 13, 2003.

Leonard E. Peters, Columbus, for appellant.

Jay Elgin Johannes, Columbus, for appellee.

Panel consists of Chief Justice BRISTER and Justices JOHN S. ANDERSON and SEYMORE.

**OPINION**

JOHN S. ANDERSON, Justice.

A jury found appellant, Vickie Y. Drake, guilty of the offense of arson of a building. *See* TEX. PEN.CODE ANN. § 28.02(a)(2) (Vernon 2003). The trial court sentenced her to fifteen years' imprisonment in the Texas Department of Criminal Justice, Institutional Division. Appellant's motion for a new trial was overruled by operation of

law. Appellant asserts four points of error on appeal. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of June 10, 2002, the owner of the Of the Day Café ("Café"), a restaurant in Columbus, Texas, arrived at the Café and discovered the back door was charred. She noticed an odd odor, as though something had burned. The previous evening, June 9, 2002, at about 11:30 p.m., a Columbus police officer was dispatched to a lumberyard and found appellant hiding with a backpack containing appellant's driver's license, a torch, and a propane-type cannister. Appellant was arrested and initially charged with attempted burglary of the Café, located about 1,500 feet from where appellant was found.

On June 11, 2002, Columbus Police Chief Robert Connor visited appellant in the library of the Colorado County Jail. Connor told appellant a scent lineup had positively identified her as being at the Café. Connor asked appellant for a statement, but she wanted to negotiate about eliminating some of the charges against her. He told appellant any negotiations would have to be with the county attorney. Connor did not read appellant her legal rights at that time. On June 13, 2002, appellant was brought to Connor's office, but she was unwilling to make a statement. On June 14, 2002, Connor again met with appellant in the jail library, and appellant provided a written statement confessing she had attempted to open the back door of the Café with the torch found in her backpack and had expected to get money from the building. Appellant was then charged with arson.

Prior to trial, appellant filed motions in limine to prohibit reference to any prior convictions or extraneous offenses. The trial court granted the motions.

Appellant also moved to suppress her statement, claiming it was involuntary. At the suppression hearing, appellant testified Connor promised her any statements she made would not be used against her, he would not file additional charges, and matters would be easier for her if she provided information. She testified that, in the past, based on promises Connor made, she had provided information to him in exchange for favorable treatment. Appellant further asserted she had signed similar statements in the past when dealing with Connor, and therefore her expectation was that he would honor his alleged promise.

Connor testified that on June 14, he showed the statement form to appellant, had her fill in her personal information, and then read the Miranda warnings to her. She initialed each right, wrote her statement, and signed the form. Connor stated that appellant did not ask to speak with her lawyer prior to making any statements.

Connor denied making any promises to appellant, attempting to coerce her, or making a deal to influence her. He testified he told appellant any negotiations would have to be with the county attorney. He stated that he did not tell appellant the county attorney would go easy on her if she confessed or that confessing would be in her best interest. Connor acknowledged that in the past the police department had paid appellant for information, but any favorable treatment she received on offenses she had allegedly committed was negotiated by the former county attorney.

The trial court suppressed any oral statements made by appellant on June 11, 2002, before she received the Miranda warnings, but denied appellant's motion to suppress the June 14, 2002 written statement.

The guilt-innocence phase was tried to a jury. The State introduced appellant's statement though Police Chief Connor. In addition to testimony from the Café owner and the arresting officer, the State called the investigating officer who testified he observed burn marks on the door behind the handle, under the door latch, and on the door frame. On cross-examination, the officer testified the door was metal, with wood on the inside, but when closed, the door would appear to be a steel door. The building was also steel.

The State also called Columbus City Manager David Stahle to testify as an expert on arson and fire investigation. Stahle's credentials included 20 years as a state certified fire/arson investigator, eight years "of Fire Marshall Agency," and experience as a firefighter and arson instructor. Appellant objected to Stahle's testifying as an expert on the grounds that the issue of whether or not a fire was started was within the province of the jury. The court overruled the objection. Based on his training and background, and inspection and analysis of the door, Stahle testified that a fire had started.

As her only witness, appellant called a private investigator who videotaped the door and the building. The videotape showed magnets attached to the building, indicating it was metal. The videotape also showed the scorching was localized in the area around the latch.

After the jurors retired for deliberations, they sent a note requesting Stahle's testimony. The judge sent a written reply informing the jury that testimony could be read back to the jury only if the jury disagreed about a witness's statement. The jury returned to the courtroom, and the court reporter read Stahle's testimony about whether or not a fire was actually started.

The jury subsequently returned a guilty verdict, and the trial court assessed punishment at fifteen years' imprisonment.

## DISCUSSION

### Points of Error One and Four: Admissibility of Appellant's Written Statement

In point of error one, appellant argues the appeal should be abated and the cause remanded because the trial court did not enter written findings of fact and conclusions of law in support of its decision to admit appellant's written statement. In point of error four, appellant argues the trial court erred in denying her motion to suppress her statement.

■■■ *Whether to abate.* The Texas Code of Criminal Procedure requires a trial court to enter a written order stating its conclusion that a defendant's statement is voluntary and setting forth the specific findings on which its conclusion is based. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979). When a trial court has not made findings of fact and conclusions of law after determining a defendant's custodial statement was voluntary, the appellate court must abate the appeal and remand the case to the trial court with instructions to reduce findings and conclusions on the disputed issues to writing. *Wicker v. State,* 740 S.W.2d 779, 784 (Tex.Crim.App. 1987).

Article 38.22, section 6 requires a trial court to file findings of fact and conclusions of law regarding the voluntariness of a confession regardless of whether or not the defendant objects to the absence of such filing. *Wicker,* 740 S.W.2d at 783; *Bonham v. State,* 644 S.W.2d 5, 8 (Tex. Crim.App.1983). *But see Garcia v. State,* 15 S.W.3d 533, 537–38 (Tex.Crim.App. 2000) (Keasler, J., dissenting and questioning the soundness of the *Wicker* rule); *State v. Terrazas,* 4 S.W.3d 720, 728 (Tex.

Crim.App.1999) (stating "[t]he 'right' to findings and conclusions is a statutory 'right' which is forfeited by a party's failure to insist upon its implementation," and therefore declining to remand sua sponte).

Nevertheless, appellate courts have held a trial court satisfies article 38.22 when it dictates its findings and conclusions to the court reporter, and those findings are later transcribed and made part of the appellate record. *See, e.g., Murphy v. State*, 112 S.W.3d 592, 601–02 (Tex.Crim.App.2003); *Parr v. State*, 658 S.W.2d 620, 623 (Tex. Crim.App.1983); *Andrade v. State*, 6 S.W.3d 584, 592 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *Blount v. State*, 64 S.W.3d 451, 457 (Tex.App.-Texarkana 2001, no pet.); *Lee v. State*, 964 S.W.2d 3, 11–12 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *Perkins v. State*, 779 S.W.2d 918, 925 (Tex.App.-Dallas 1989, no pet.).

In *Andrade*, the defendant argued his signed confession was involuntary because he believed the statement he was signing was a form to release his dog from the pound. 6 S.W.3d at 587. He claimed, because of his poor eyesight, he did not realize the form contained his confession. *Id.* The trial court found the defendant " 'was given his warnings, did understand those warnings, that he did give up those rights and make a statement, and that it was voluntary and intelligently made.' " *Id.* at 592. These findings were dictated into the record. *Id.* On appeal, the defendant claimed the trial court's findings were not specific enough to allow him to show error. *Id.* at 592. This court, however, concluded the trial court impliedly rejected the defendant's testimony that he did not read the confession before signing it, and further that the trial court complied with article 38.22, section 6, by dictating the findings into the record. *Id.*

In the instant case, appellant claimed Connor promised her any statements she made would not be used against her, he would not file additional charges, and matters would be easier for her if she provided information. Connor denied making any promises to appellant or making a deal to influence her to provide any statements, written or oral. Connor testified he did not attempt to coerce appellant, and told appellant that any negotiations would have to be made with the county attorney. He stated that he did not tell appellant that the county attorney would be lenient with her if she confessed or that it would be in her best interest. Connor acknowledged the police department had previously paid appellant for information, but only the former county attorney negotiated any favorable treatment she received on offenses she had allegedly committed.

After listening to the disputed testimony, the trial court denied appellant's motion to suppress her June 14, 2002 written statement. The court stated: "What the defendant may [have] thought, without any promises is not relevant. Past history doesn't make any difference. This time is what's before the court. When it .comes down to believing Ms. Drake and Chief Connor, the court will give more credence to Chief Connor's testimony than hers." The trial court's statements were later transcribed and made part of the record.

■ One purpose of requiring the trial court to enter findings and conclusions is to provide the parties and the reviewing court with a basis on which to assess the trial court's ruling. *See Bonham*, 644 S.W.2d at 8. The conclusion regarding voluntariness must appear from the record with unmistakable clarity. *Id.* at 7.

In the present case, the trial court found Connor was more credible than appellant and no promises had been made. As in *Andrade*, in which this court concluded the trial court impliedly rejected appellant's

version of the facts, we conclude that, in finding Connor to be more credible, the trial court implicitly rejected appellant's testimony and found that Connor made no assurances to appellant and did not attempt to negotiate with her. We hold the trial court sufficiently satisfied Article 38.22, section six.

We overrule appellant's point of error one.

■ **Voluntariness of the Statement.** In point of error four, appellant contends the trial court erred in denying her motion to suppress. She contends her statement was involuntary because it was obtained by means of improper inducement.

■ We review the trial court's decision on a motion to suppress under an abuse of discretion standard. *See Villarreal v. State,* 935 S.W.2d 134, 138 (Tex. Crim.App.1996). When there is conflicting evidence about whether a confession was voluntary, the trial court is the sole judge of facts at the suppression hearing, and an appellate court may not disturb any finding supported by the evidence. *Dunn v. State,* 721 S.W.2d 325, 336 (Tex.Crim.App. 1986). Whether a confession is voluntary is a mixed question of law and fact. *Garcia,* 15 S.W.3d at 535. Appellate courts should give almost absolute deference to trial court determinations of historical fact supported by the record, especially when those findings are based on an evaluation of credibility and demeanor. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Appellate courts should afford the same amount of deference to trial court rulings on mixed questions of law and fact when the resolution of those ultimate issues turns on an evaluation of credibility and demeanor. *Id.* However, an appellate court may review *de novo* mixed questions of law and fact that do not fit within that category. *Id.*

In the instant case, the trial court's ruling at the suppression hearing was based on its evaluation of the credibility and demeanor of appellant and Connor. Therefore, we afford almost complete deference to the trial court's ruling.

■ Article 38.21 requires the statement to have been "freely and voluntarily made without compulsion or persuasion." TEX.CODE CRIM. PROC. ANN. art. 38.21 (Vernon 1979). In determining the question of voluntariness, a court should consider the totality of circumstances under which the statement was obtained. *Creager v. State,* 952 S.W.2d 852, 855 (Tex.Crim.App.1997). The ultimate question is whether the appellant's will was overborne. *Id.* at 856.

As discussed above, the trial court credited Connor's version of the events surrounding appellant's statement. Connor testified he never told appellant matters would be better for her if she confessed or the city attorney would go easy on her. Appellant nevertheless refers to the following parts of Connor's testimony as evidence her statement was the product of improper inducement: (1) appellant previously gave information to Connor and had received favorable treatment; (2) appellant tried to negotiate a deal during Connor's visit to her on June 11; and (3) Connor was unsuccessful in obtaining a statement on June 13. Finally, she quotes Connor's testimony:

I went out to talk to her to negotiate with her and tell her about this statement. I went to talk with her and get everything together so I could go back to the county attorney and give a statement, and I went and talked to her, and when I talked to Vickie, I told her everything that was lined up and that she could help herself. At that particular

time, she gave a statement and I went to the county attorney with it.[1]

■ Before a promise will render a confession inadmissible, the promise must be shown to have induced the confession. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim.App.1993). In order to induce a confession, the promise must be (1) of some benefit to the defendant, (2) positive, (3) made or sanctioned by someone in authority, and (4) of such an influential nature that it would likely influence a defendant to speak untruthfully. *See Creager*, 952 S.W.2d at 856. An improper inducement must be of an exceptional character before it will invalidate an otherwise voluntary confession. *Espinosa v. State*, 899 S.W.2d 359, 364 (Tex.App.-Houston [14th Dist] 1995, pet. ref'd). General, non-specific offers to help a defendant are unlikely to elicit a false statement by a suspect, and will not render a confession invalid. *Id.* (citing *Dykes v. State*, 657 S.W.2d 796, 797 (Tex.Crim.App.1983)). Furthermore, general statements about how a confession might result in more lenient treatment will not invalidate the confession. *Id.*

In *Espinosa*, the defendant contended his statement was involuntary because it was induced by promises of leniency by the police. *Id.* at 362. The officers allegedly urged him to tell them what happened, assuring the defendant "[e]verything will be better for you." *Id.* At least one officer allegedly promised the defen-

dant would "get less time." *Id.* at 363. Although acknowledging that the promise of less time might have influenced the appellant to make a statement, this court dismissed the notion that the inducement probably caused him to confess falsely. *Id.* at 364. Just as the officers' inducements did not render Espinosa's confession involuntary, Conner's general, non-specific statement appellant "could help herself" did not render appellant's statement involuntary.[2]

We overrule appellant's point of error four.

### Point of Error Two: Denial of the Mistrial Motion

■ In point of error two, appellant contends the trial court erred in denying her motion for a mistrial after Connor alluded to extraneous offenses in violation of a motion *in limine*. The testimony at issue occurred during defense counsel's attempt to establish that an attempted burglary charge had escalated into arson without any intervening justification. When defense counsel questioned Connor whether there were any allegations that appellant "had attacked the structure or done anything additionally to it between June 11 and the 14th," Connor answered, "No. We were working so many burglaries on Ms. Drake. The only one that I—." The trial court sustained defense counsel's objection, instructed the jury to disregard the

---

1. When asked about using the word "negotiate," Connor clarified, "Well, not negotiate. I went—I used the word 'negotiate.' I went out to interview her."

2. One difference between *Espinosa* and the present case is the fact appellant had previously been paid for information and had received favorable treatment, with the county attorney negotiating the latter. The trial court, however, concluded that, absent any promises by Connor in the present situation, past history was not relevant. Under the

totality of the circumstances, we conclude appellant's past experience does not raise Connor's statement appellant "could help herself," to the level of an inducement that would render the statement involuntary.

We also conclude the fact appellant did not provide a statement until Connor's third visit is not a circumstance tending to render the statement involuntary. Appellant's refusal to provide a statement on the first and second visits indicates she was capable of exercising her will to refuse to give a statement.

answer, but denied appellant's motion for a mistrial.

 We review the trial court's denial of the motion for a mistrial under an abuse of discretion standard. *Ladd v. State,* 3 S.W.3d 547, 567 (Tex.Crim.App. 1999). When objectionable testimony is elicited, inadvertently or deliberately, an appellate court presumes the jury will follow instructions to disregard the evidence. *See id.* (quoting *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.1987)). A trial court's instruction to disregard can render harmless testimony referring to extraneous offenses "unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind." *Kemp v. State,* 846 S.W.2d 289, 308 (Tex.Crim.App. 1992). A court should review the particular facts of the case in determining whether a given error requires a mistrial. *See Ladd,* 3 S.W.3d at 567.

In cases comparable to the present case, courts have held a curative instruction sufficient to render objectionable testimony harmless. *See, e.g., Kemp,* 846 S.W.2d at 308 (holding State's witness's reference to defendant's prior incarceration rendered harmless by curative instruction); *Gardner,* 730 S.W.2d at 696–97 (holding witness's testimony during State's cross-examination that, when defendant was in the penitentiary, he had stomach problems attributable to drug withdrawal was not so inflammatory as to require a mistrial); *Barney v. State,* 698 S.W.2d 114, 124–25 (Tex.Crim.App.1985) (holding State's witness's answer that victim did not like defendant because "he was an ex-con" was improper reference to extraneous offense, but cured by jury instruction); *Campos v. State,* 589 S.W.2d 424, 427–28 (Tex.Crim. App.1979) (holding witness's testimony,

during State's cross-examination, that defendant was arrested and jailed on an extraneous offense was cured by jury instruction); *Bledsoe v. State,* 21 S.W.3d 615, 624 (Tex.App.-Tyler 2000, no pet.) (holding detective's testimony, during questioning by State, that detective served warrant on defendant at county jail was cured by instruction when State did not solicit response or emphasize the testimony to the jury, and detective did not elaborate on reasons for the incarceration).

In the present case, Connor's testimony was not solicited by the State, but was a nonresponsive answer to defense counsel's cross-examination. The trial court immediately instructed the jury to disregard the statement, and there was no further mention of the extraneous offenses. As in the preceding cases, Connor's testimony was not so inflammatory the jurors could not follow the court's instructions to disregard it. The trial court did not abuse its discretion in denying appellant's motion for mistrial.

We overrule appellant's point of error two.

### Point of Error Three: Admissibility of Expert Testimony

 In point of error three, appellant contends the trial court "erred" by admitting the testimony of David Stahle, the Columbus City Manager, who had twenty years experience as a state certified fire/arson investigator. When the State called Stahle, defense counsel objected that "the issue is whether a fire was started and that should be within the province of the Jury." Defense counsel expanded:

> It is under Rule 7.04[sic], I believe it is. There is nothing to bar testimony that embraces or addresses the main issue, but the expert cannot supplant the jury's role. They are the final decision maker and I don't think this particular

case requires an expert. I think the Jury is equally qualified to look at the photos and see what happened and make a decision as to whether or not in their opinion that constitutes starting a fire. Essentially it is improper bolstering and extraneous on the State's part.

The trial court overruled the objection and subsequently permitted appellant a running objection to Stahle's testimony.

After summarizing his experience and training in arson and fire investigation, Stahle then testified he had inspected the door and door frame, had viewed photographs taken soon after the offense was reported, and had taken photographs of his own. Based on his observations, Stahle opined there "was evidence of direct flame impingements upon the door and siding of the jamb localized around the lock area." He testified the door was a hollow metal-clad door. According to Stahle, the paint on the door, the wood frame, and the framing of the building were capable of catching on fire. Stahle was able to determine a "fire had started." He based his determination on the following: "There was charring of wood. There was a reflection of the wood mass, a common cause of a chemical reaction that results in fire. There was deep charring and it had burned for some period of time." Stahle further explained that propane burns at 2,810 degrees, "certainly sufficient to start a fire in any flammable or combustible material." Using a photograph of the edge of the door and the door jamb, Stahle pointed out an area that was scorched and burned, as well as an area of deep char. He concluded by explaining a "rule of thumb" that there is an inch of char for every 45 minutes of burning, and he observed about a half-inch of char.

■ We review a trial court's ruling on the admissibility of evidence under an abuse-of-discretion standard. *Weatherred*

*v. State,* 15 S.W.3d 540, 542 (Tex.Crim. App.2000) (citing *Prystash v. State,* 3 S.W.3d 522, 527 (Tex.Crim.App.1999)). Accordingly, we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* (citing *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990)). In addition, we must review the trial court's ruling in light of what was before the trial court at the time the trial court ruled. *Id.* (citing *Hoyos v. State,* 982 S.W.2d 419, 422 (Tex. Crim.App.1998); *Hardesty v. State,* 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App.1984)).

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Tex.R. Evid. 704. Texas Rule of Evidence 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex.R. Evid. 702.

■ As the court of criminal appeals has explained, Rule 702 contains two themes:

First, the jury must not be qualified to intelligently and to the best possible degree determine the particular issue without benefit of the expert witness' [sic] specialized knowledge. Second, the clear meaning of the rule must be observed.... The use of expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror. The decision to be made remains with the jury, but the testimonial expertise is allowed to enable the trier of fact to better comprehend the full significance of the evidence. The evidence at issue is admissible if it encom-

passes or "embraces" an ultimate fact; it may not decide that fact for the jury.

*Duckett v. State,* 797 S.W.2d 906, 914 (Tex. Crim.App.1990) (citations omitted), *disapproved on other grounds in Cohn v. State,* 849 S.W.2d 817, 819 (Tex.Crim.App.1993). Additionally, "When the evidence is of such content as to be classified as 'specialized' within a particular discipline, a presumption may be drawn that the evidence is not of common experience." *Id.* at 917.

In the present case, the State had to prove appellant "start[ed] a fire, regardless of whether the fire continue[d] after ignition." Tex. Pen.Code Ann. § 28.02(a)(2) (Vernon 2003). The evidence established the Café door and door frame were steel, with wood inside the door and in the door frame. Although the photographs showed blackened or charred areas on the door and door frame, Stahle provided evidence from which the jury could translate the amount of char on the wood jamb into the length of time the wood burned (*i.e.,* one-half of 45 minutes). Although it is possible the jury would have been capable of deciding whether this amount of time meant appellant started a fire, Stahle had specialized knowledge on the issue which was helpful. *See* John F. Sutton, Jr. & Cathleen C. Herasimchuk, *Article VII: Opinions and Expert Testimony,* 30 Hous. L.Rev. 797, 817 (1993) (Texas Rules of Evidence Handbook) (citing *Duckett,* 797 S.W.2d at 917).[3] We conclude the trial court did not abuse its discretion in admitting Stahle's testimony.

We overrule point of error three.

---

**3.** In addition to Stahle's testimony on an ultimate issue being admissible under Rule 704, his testimony was also necessary to bridge a logical gap in the proof of the offense. Here, there was no testimony anyone called the fire department, and there were no eyewitnesses

We affirm the judgment of the trial court.

---

to testify they saw flames coming from the Café. Inferentially, there was no fire. However, through Stahle's testimony, and only through his testimony, was the State able to offer evidence regarding a critical element of arson: that the defendant started a fire.