Gregory Charles Reed v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-157-CR

GREGORY CHARLES REED APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Gregory Charles Reed appeals his convictions for aggravated sexual assault of a child with a deadly weapon, indecency with a child, and aggravated sexual assault causing serious bodily injury.  The trial court found Reed guilty of these offenses, sentenced him to life imprisonment for aggravated sexual assault of a child with a deadly weapon and to twenty years’ confinement for the other two offenses, all to run concurrently, and made an affirmative deadly weapon finding.  In five points, Reed challenges the admission of certain evidence and alleges that this court erred by failing to abate this appeal to require written findings pursuant to article 38.22 of the code of criminal procedure.
  We will affirm.

II.  Background Facts

On or about December 11, 2001, a few weeks after Reed met fourteen-year-old, K.B., she was suspended from school and she invited Reed to come over to her house the following day.  When Reed arrived, the couple hugged and kissed, but when Reed indicated that he wanted to have sex, K.B. said she did not and demanded that Reed leave.  Reed then punched K.B. in the face. K.B. tried to run out of the house, but Reed pulled her back in by the hair. As they sat on the couch, Reed forced K.B. to stroke his penis with her hand. Reed then told K.B. to go to the bedroom, and he retrieved a knife from the kitchen. When he returned to the bedroom, Reed ordered K.B. to remove her clothing. He then sexually assaulted her vaginally and anally.

After the sexual assault, Reed cut off the cord to K.B.’s bedside clock and attempted to strangle her.  He later tried to drown her in the bathtub.  Finally, Reed stabbed K.B. in the neck.  He retrieved the knife and threw it at K.B.; it cut her left forearm and became lodged in her left breast.  He retrieved the knife again and threw it at K.B. again.  This time, it penetrated K.B.’s abdomen, cutting her liver.  Reed then left, telling K.B. to clean up and not to tell anyone what had occurred.

Reed testified that K.B. lied to him about her age and that he and K.B. had consensual sex.  He said that K.B. tried to stab him, and he hit her and stabbed her because he felt threatened and because she kept coming at him with the knife.  He admitted that K.B. was lying on the ground when he stabbed her in the throat and threw the knife at her.  The State called several witnesses to testify about incriminating remarks Reed made near the time of the offense.  Finally, the State offered into evidence two written statements by Reed.  After the trial court found Reed guilty and sentenced him, Reed perfected this appeal.

III.  Reed’s Evidentiary Challenges

Reed raises four points challenging the trial court’s admission of a variety of evidence. 

A.  Standard of Review for Evidentiary Rulings

A trial court’s decision to admit or exclude evidence is afforded a great deal of discretion.  
Montgomery v. State
, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990).  Therefore, we review a trial court’s ruling on the admissibility of evidence under an abuse of discretion standard.  
Angleton v. State
, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).  If the trial court’s evidentiary ruling is reasonably supported by the record and is correct under any theory of applicable law, we must uphold it—this is known as the “zone of reasonable disagreement” test.  
Montgomery
, 810 S.W.2d at 391 (op. on reh’g).  “The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.”  
Id
.
 
at 380. Nonetheless, in order to be admissible, the evidence must be relevant as defined by Rule 401 of the Texas Rules of Evidence.  
Tex. R. Evid.
 401. Pursuant to Rule 401, evidence is relevant if it has “any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.”  
Id
.  In determining whether evidence is relevant, courts look to the purpose for offering the evidence and whether there is a direct or logical connection between the offered evidence and the proposition sought to be proved.
  Reed v. State
, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd).  So long as there is any reasonable logical nexus, the evidence will pass the relevancy test.  
Id.

B.  State’s Exhibit 49

In his first point, Reed contends that the trial court erred by admitting into evidence State’s Exhibit 49, a letter Reed wrote to a friend while he was incarcerated, in which he discusses the nature of his sexual encounter with K.B. Reed argues that the letter was not relevant to prove any fact of consequence in dispute at trial, and therefore, the “only apparent purpose for Exhibit 49 was to prove that [he] was sexually promiscuous.”  Consequently, he complains that Exhibit 49 was impermissible character evidence pursuant to 404(b) of the rules of evidence.  The State, however, maintains that the letter was relevant as an admission of guilt to aggravated sexual assault of a child. 

At trial, when the State attempted to offer Reed’s letter into evidence, Reed objected, complaining that the letter was not relevant to any issue in dispute in the case.  In response, the State advised the trial court that the letter contained statements against interest from Reed, discussing the encounter with K.B. and her resulting injuries.  After reviewing the contents of the letter for relevancy, the trial court admitted the letter into evidence.  In the letter, Reed describes his sexual encounter with K.B., claiming that he did not sexually assault K.B., nor did he have to do so because he ”was getting to[o] much” from other sources.  While he admits that sexual intercourse occurred, he states that K.B. “gave it up and [that] she lied about her age.”  He also states that K.B. tried to hurt him and to stab him, so he defended himself.  

Prior to the introduction of Exhibit 49 into evidence, Reed provided testimony consistent with several statements contained in the letter.  For example, Reed admitted that he and K.B. engaged in consensual sex, but he indicated that she told him she was seventeen years old at the time of the sexual encounter.  He also testified that after K.B. became upset with him and came at him with a knife, he felt threatened and stabbed her in self-defense. Because Reed testified prior to the introduction of the letter in a manner consistent with his statements in the letter concerning the nature of his sexual encounter with K.B. and her resulting injuries, introduction of Exhibit 49 did not have the tendency to make Reed’s guilt of the charged offense more or less probable than it would be without the evidence.  Thus, based on our review of the record, it appears that Exhibit 49 was not relevant to any issue apart from its tendency to prove Reed’s promiscuous sexual conduct around the time of his sexual encounter with K.B.  
See 
Tex. R. Evid.
 404.  As a result, we hold that the trial court abused its discretion by admitting State’s Exhibit 49 into evidence.  

Having found error, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.  
See
 
Tex. R. App. P.
 44.2. 
Error under the rules of evidence in the admission of evidence constitutes nonconstitutional error.  
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  A reviewing court is to disregard nonconstitutional error that does not affect the substantial rights of the defendant.  
Tex. R. App. P.
 44.2(b). 
In making this determination, we review the record as a whole. 
Kotteakos v. United States
, 328 U.S. 750, 764-65, 66 S. Ct. 1239, 1248 (1946).

In the instant case, a substantial portion of Exhibit 49 corroborated Reed’s testimony at trial and was exculpatory in that it was consistent with his claims that K.B.’s injuries resulted from self-defense.  At trial, the State did not continually emphasize Reed’s promiscuous sexual conduct, nor did it rely on any statements from Exhibit 49 during argument.  In fact, the State only referenced the contents of the letter after Reed objected to its admissibility and immediately after its admission into evidence. 

In addition, there was overwhelming evidence of Reed’s guilt to the charged offenses.  Specifically, the trial court heard testimony that Reed violently sexually assaulted a fourteen-year-old girl, forced her to touch him, stabbed her as she was lying on the ground, and attempted to both strangle and drown her.  Thus, after reviewing the record as a whole, we are unpersuaded that the trial court’s admission of Exhibit 49 affected Reed’s substantial rights.  
See Torres v. State
, 92 SW.3d 911, 919 (Tex. App.—Houston [14th Dist.] 2002, pet. ref’d).  Consequently, we overrule Reed’s first point.

C.  State’s Exhibits 57 and 58

In his third and fourth points, Reed contends that the trial court erred by admitting into evidence State’s Exhibits 57 and 58, two written statements made by Reed after he was taken into custody, because both statements were involuntary.  The State maintains that Reed voluntarily made both written statements after he was arrested and properly advised of his rights. 

With respect to State’s Exhibit 57, Reed complains that this written statement was involuntary because he agreed to give this statement “while he was lying on the ground, handcuffed, in the pouring rain, and surrounded by armed police officers.”  When the State attempted to introduce Exhibit 57 into evidence at trial, Reed objected on the basis that the statement was involuntarily made.  The trial court held a 
Jackson v. Denno
(footnote: 1) hearing and determined that the statement “was made under voluntary conditions” after Reed was properly advised of his 
Miranda
(footnote: 2) rights and agreed to waive them. During the hearing, Detective Cory Ulmer, a police officer for the City of Fort Worth and the lead officer in Reed’s case, testified as the sole witness regarding the facts and circumstances surrounding Reed’s arrest and his custodial written statements.  Detective Ulmer testified that on December 15, 2001, after K.B. identified Reed as her assailant, he obtained an arrest warrant for Reed for attempted capital murder.  Detective Ulmer and his arrest team then went to Reed’s residence to take Reed into custody.  According to the detective, when they arrived at Reed’s residence, it was raining very heavily. As Detective Ulmer knocked on Reed’s front door, Reed attempted to leave the premises by using the back door.  Three officers immediately grabbed Reed to try to arrest him, but Reed struggled with the officers by pulling his arms away from them.  Reed was eventually taken to the ground and handcuffed.  After the officers gained control of Reed, Detective Ulmer informed Reed that he was under arrest, advised him of his 
Miranda 
rights, and asked him if he would like to talk about the incident involving K.B.  Reed agreed to discuss the incident with Detective Ulmer and was transported to Detective Ulmer’s office in a marked law enforcement vehicle.

Upon arrival, Reed was taken to an interview room by another officer.  At approximately 11:00 p.m., Detective Ulmer joined Reed in the interview room, removed Reed’s handcuffs, and once again advised him of his rights. After Reed waived his rights and signed a form indicating his intention to do so, Detective Ulmer began questioning him about what had transpired between himself and K.B.  At first, Reed denied any knowledge of the incident, but when Detective Ulmer challenged this assertion and informed Reed that this was his opportunity to tell his side of the story, Reed began discussing his encounter with K.B.  During this time, Reed told Detective Ulmer that after he and K.B. had consensual sex, she became angry and pulled a knife on him, and he retaliated in self-defense.  At approximately 11:40 p.m., Reed agreed to provide a written statement detailing the incident involving K.B.  He then filled out a statement form, waiving his rights and describing the events surrounding his encounter with K.B.

At the hearing, Detective Ulmer testified that he and Reed were the only persons present in the interview room when Reed made his statement; however, he indicated that he did not threaten or coerce Reed into making it. He also testified that, although the door to the interview room was shut, he offered Reed the opportunity to leave the room to use the restroom or to get a drink of water.  According to Detective Ulmer, he believed that Reed voluntarily made his first written statement after intelligently and knowingly waiving his rights.

T
he trial court is the sole judge of the weight and credibility of the witnesses’ testimony at a 
Jackson v. Denno 
hearing and may choose to believe or disbelieve any or all of such testimony. 
 Dewberry v. State
, 4 S.W.3d 735, 747-48 (Tex. Crim. App. 1999),
 cert. denied
, 529 U.S. 1131 (2000). Accordingly, we may not disturb any finding that is supported by the record. 
Id
.  In the instant case, the trial court found, based on Detective Ulmer’s testimony, that Reed’s first written statement was voluntary.  Because our review of the record supports this finding, we hold that the trial court did not abuse its discretion by admitting State’s Exhibit 57 into evidence.  
See Sells v. State
, 121 S.W.3d 748, 767 (Tex. Crim. App.), 
cert. denied
, 124 S. Ct. 511 (2003) .  We overrule Reed’s third point.

With respect to State’s Exhibit 58, Reed argues that this statement was “irredeemably tainted by [his] first” statement, State’s Exhibit 57.  On December 18, 2001, three days after Reed was arrested and made his initial statement, Detective Ulmer went to see Reed at the Mansfield Law Enforcement Center to gather further information regarding the incident involving Reed and K.B.  Detective Ulmer first inquired as to whether Reed was represented by an attorney, and Reed told him that he was not.  Detective Ulmer then advised Reed of his rights, and Reed agreed to waive them. According to Detective Ulmer, Reed was eager to give a second statement because he did not believe his first statement was favorable to him.  Although Reed requested that his first written statement be destroyed, Detective Ulmer told him that he could not destroy it.  But Detective Ulmer advised Reed that he could set his first statement straight by providing an additional statement. Thereafter, Reed provided a second written statement.

During the hearing, Reed objected to the admission of State’s Exhibit 58 on the basis of the voluntariness of the statement.  Considering the testimony provided by Detective Ulmer, the trial court found that the statement was voluntarily made and admitted State’s Exhibit 58 into evidence.  Because this finding is supported by the record, we hold that the trial court did not abuse its discretion by admitting State’s Exhibit 58 into evidence.  
See id
.  Consequently, we overrule Reed’s fourth point. 

D.  State’s Exhibit 73

In his fifth point, Reed contends that the trial court erred by admitting State’s Exhibit 73, a photocopy of a plexiglass shank, into evidence at the punishment phase of trial because it was not relevant, nor was it ever conclusively linked to Reed.  The State maintains that  State’s Exhibit 73 was properly identified as a photocopy of the plexiglass shank found in Reed’s possession and was relevant to sentencing. 

During punishment, the State called Officer Kevin Miller, a jailer with the Tarrant County Sheriff’s Department, to testify regarding Reed’s possession of a prohibited weapon inside the Tarrant County Corrections Center.  According to Officer Miller, on May 12, 2002, he performed a shakedown search of the jail cells within Reed’s cell block because a plexiglass window on the cell across from Reed’s cell broke during an altercation the previous day, and some pieces of plexiglass were believed to be in the possession of inmates in the neighboring cells.  While searching Reed’s cell, Officer Miller discovered a six-inch piece of plexiglass inside a leather domino pouch.  After Officer Miller recovered the plexiglass shank from Reed’s cell, he photocopied the weapon in accordance with department policy.  He then placed the photocopy of the plexiglass shank in the files at the sheriff’s department as a record of the item found in Reed’s cell.  Officer Miller testified that the plexiglass shank found in Reed’s cell was capable of causing death or serious bodily injury, and therefore, was prohibited under the Correction Center’s rules.  Consequently, after a disciplinary hearing regarding Reed’s possession of the plexiglass shank, Reed was placed on thirty days’ restriction in the Correction Center.

Prior to trial, the State provided Reed with notice of its intent to offer evidence related to his disciplinary infraction of possessing the plexiglass shank. At the punishment phase of trial, Reed objected to the admission of State’s Exhibit 73 on the basis of relevance.  The trial court overruled his objection and admitted the exhibit into evidence.

The Texas Code of Criminal Procedure permits a trial court to admit evidence “as to any matter the court deems relevant to sentencing,” including evidence arising after the offense.  
Tex. Code Crim. Proc. Ann.
 art. 37.07, § 3(a)(1) (Vernon Supp. 2004); 
see Contreras v. State
, 59 S.W.3d 362, 365 (Tex. App.—Houston [1st
 Dist.] 2001, no pet.).
  Evidence is deemed relevant during the punishment phase of trial if it assists the fact finder in determining the appropriate sentence given the particular defendant in the circumstances presented. 
 
Rogers v. State
, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999). Accordingly, the trial court has broad discretion in determining the admissibility of evidence during the punishment phase of trial.  
Cooks v. State
, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992), 
cert. denied
, 509 U.S. 927 (1993).

Given the violent nature of the offenses that Reed was found guilty of committing, evidence proving his possession of the plexiglass shank, a prohibited weapon, after his incarceration would be helpful to the trial court’s determination of the appropriate sentence in this case.  In addition, although Reed complains that Exhibit 73 was not relevant because Officer Miller “never identified it as being a copy of the ‘shank’ found in [his] cell,” Officer Miller indicated that the plexiglass shank depicted in State’s Exhibit 73 was found in a domino pouch in Reed’s cell and that the photocopy of the plexiglass shank was placed in the department’s files as a record of the disciplinary infraction. Officer Miller testified that Reed was the only person with access to his cell because it was a single cell unit that was locked down for twenty-three hours a day. Consequently, because the domino pouch and the enclosed plexiglass shank were discovered in Reed’s cell, a sufficient connection existed demonstrating Reed’s possession of the plexiglass shank and rendering the plexiglass shank relevant to sentencing. 
See Soria v. State
, 933 S.W.2d 46, 60 (Tex. Crim. App. 1996) (op. on reh’g) (holding that drawing of defendant holding bloody knife found in defendant’s cell was sufficient connection to render the drawing relevant to sentencing), 
cert. denied
, 520 U.S. 1253 (1997).  Accordingly, we overrule Reed’s fifth point.

IV.
  Article 38.22 Satisfied

In his second point, Reed contends that this court erred by failing to abate this appeal to require written findings regarding the voluntariness of his statements as dictated under article 38.22 of the code of criminal procedure.
 The State argues that this court’s denial of Reed’s motion to abate was proper because the trial court’s specific oral findings, transcribed and made part of the record on appeal, satisfied the requirements of article 38.22.  We agree. In all cases where a question is raised concerning the voluntariness of a statement of an accused, the code of criminal procedure requires a trial court to enter a written order stating its conclusion as to whether or not the statement was voluntarily made and setting forth the specific findings on which its conclusion is based.  
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 6 (Vernon Supp. 2004).  Nonetheless, a trial court satisfies the requirements of article 38.22 when it dictates its findings and conclusions to the court reporter, and they are transcribed and made a part of the statement of facts, filed with the district clerk and made a part of the appellate record.  
Murphy v. State
, 112 S.W.3d 592, 601-02 (Tex. Crim. App. 2003), 
cert denied
, 124 S. Ct. 1660 (2004); 
Drake v. State,
 123 S.W.3d 596, 601 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d); 
Blount v. State
, 64 S.W.3d 451, 457 (Tex. App.—Texarkana 2001, no pet.); 
Andrade v. State
, 6 S.W.3d 584, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).

In the instant case, with respect to both of Reed’s written statements, Exhibits 57 and 58, the trial court held a hearing after an issue as to voluntariness was raised and determined that each statement was voluntarily made.  At the conclusion of each hearing, the trial court dictated its findings and conclusions to the court reporter, clearly detailing the specific facts on which its conclusion was based.  The trial court’s findings and conclusions were transcribed and made part of the record on appeal.  Nevertheless, during the pendency of this appeal, Reed filed a motion to abate the appeal to require written findings regarding the voluntariness of his statements.  Relying on the court of criminal appeals’ decision in 
Murphy
, this court denied his motion.  112 S.W.3d at 601-02.

The trial court’s specific, oral findings and conclusions on the record sufficiently provide the parties with a basis on which to assess the trial court’s ruling and enable this court to resolve the fact issues upon which the appellant bases his ground of error.  
See Bonham v. State
, 644 S.W.2d 5, 8 (Tex. Crim. App. 1983).  Consequently, we are unpersuaded that our prior decision denying Reed’s motion to abate this appeal was erroneous because the trial court sufficiently satisfied article 38.22 by dictating its findings and conclusions into the record.  We overrule Reed’s second point.

V.  Conclusion

Having overruled all of Reed’s points on appeal, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: June 17, 2004

FOOTNOTES
1:
378 U.S. 368, 84 S. Ct. 1774 (1964).

2:
Miranda v. Arizona
, 384 U.S. 436, 86 S. Ct. 1602 (1966).