COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-157-CR
  
  
GREGORY 
CHARLES REED                                                     APPELLANT
 
V.
 
THE 
STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM 
THE 297TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. Introduction
        Appellant 
Gregory Charles Reed appeals his convictions for aggravated sexual assault of a 
child with a deadly weapon, indecency with a child, and aggravated sexual 
assault causing serious bodily injury. The trial court found Reed guilty of 
these offenses, sentenced him to life imprisonment for aggravated sexual assault 
of a child with a deadly weapon and to twenty years’ confinement for the other 
two offenses, all to run concurrently, and made an affirmative deadly weapon 
finding. In five points, Reed challenges the admission of certain evidence and 
alleges that this court erred by failing to abate this appeal to require written 
findings pursuant to article 38.22 of the code of criminal procedure.  We 
will affirm.
II. Background 
Facts
        On 
or about December 11, 2001, a few weeks after Reed met fourteen-year-old, K.B., 
she was suspended from school and she invited Reed to come over to her house the 
following day.  When Reed arrived, the couple hugged and kissed, but when 
Reed indicated that he wanted to have sex, K.B. said she did not and demanded 
that Reed leave.  Reed then punched K.B. in the face.  K.B. tried to 
run out of the house, but Reed pulled her back in by the hair.  As they sat 
on the couch, Reed forced K.B. to stroke his penis with her hand.  Reed 
then told K.B. to go to the bedroom, and he retrieved a knife from the 
kitchen.  When he returned to the bedroom, Reed ordered K.B. to remove her 
clothing.  He then sexually assaulted her vaginally and anally.
        After 
the sexual assault, Reed cut off the cord to K.B.’s bedside clock and 
attempted to strangle her.  He later tried to drown her in the 
bathtub.  Finally, Reed stabbed K.B. in the neck.  He retrieved the 
knife and threw it at K.B.; it cut her left forearm and became lodged in her 
left breast.  He retrieved the knife again and threw it at K.B. 
again.  This time, it penetrated K.B.’s abdomen, cutting her liver.  
Reed then left, telling K.B. to clean up and not to tell anyone what had 
occurred.
        Reed 
testified that K.B. lied to him about her age and that he and K.B. had 
consensual sex.  He said that K.B. tried to stab him, and he hit her and 
stabbed her because he felt threatened and because she kept coming at him with 
the knife.  He admitted that K.B. was lying on the ground when he stabbed 
her in the throat and threw the knife at her.  The State called several 
witnesses to testify about incriminating remarks Reed made near the time of the 
offense.  Finally, the State offered into evidence two written statements 
by Reed.  After the trial court found Reed guilty and sentenced him, Reed 
perfected this appeal.
III. Reed’s 
Evidentiary Challenges
        Reed 
raises four points challenging the trial court’s admission of a variety of 
evidence.
        A. Standard of Review for Evidentiary Rulings
        A 
trial court’s decision to admit or exclude evidence is afforded a great deal 
of discretion. Montgomery v. State, 810 S.W.2d 372, 378-79 (Tex. Crim. 
App. 1990).  Therefore, we review a trial court’s ruling on the 
admissibility of evidence under an abuse of discretion standard.  Angleton 
v. State, 971 S.W.2d 65, 67 (Tex. Crim. App. 1998).  If the trial 
court’s evidentiary ruling is reasonably supported by the record and is 
correct under any theory of applicable law, we must uphold it—this is known as 
the “zone of reasonable disagreement” test.  Montgomery, 810 
S.W.2d at 391 (op. on reh’g).  “The mere fact that a trial judge may 
decide a matter within his discretionary authority in a different manner than an 
appellate judge in a similar circumstance does not demonstrate that an abuse of 
discretion has occurred.” Id. at 380.
        Nonetheless, 
in order to be admissible, the evidence must be relevant as defined by Rule 401 
of the Texas Rules of Evidence. Tex. R. Evid. 401.  Pursuant to 
Rule 401, evidence is relevant if it has “any tendency to make the existence 
of any fact that is of consequence to the determination of the action more 
probable or less probable than it would be without the evidence.”  Id.  
In determining whether evidence is relevant, courts look to the purpose for 
offering the evidence and whether there is a direct or logical connection 
between the offered evidence and the proposition sought to be proved.  Reed 
v. State, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth 2001, pet. ref'd).  
So long as there is any reasonable logical nexus, the evidence will pass the 
relevancy test.  Id.
        B. 
State’s Exhibit 49
        In 
his first point, Reed contends that the trial court erred by admitting into 
evidence State’s Exhibit 49, a letter Reed wrote to a friend while he was 
incarcerated, in which he discusses the nature of his sexual encounter with K.B.  
Reed argues that the letter was not relevant to prove any fact of consequence in 
dispute at trial, and therefore, the “only apparent purpose for Exhibit 49 was 
to prove that [he] was sexually promiscuous.”  Consequently, he complains 
that Exhibit 49 was impermissible character evidence pursuant to 404(b) of the 
rules of evidence.  The State, however, maintains that the letter was 
relevant as an admission of guilt to aggravated sexual assault of a child.
        At 
trial, when the State attempted to offer Reed’s letter into evidence, Reed 
objected, complaining that the letter was not relevant to any issue in dispute 
in the case.  In response, the State advised the trial court that the 
letter contained statements against interest from Reed, discussing the encounter 
with K.B. and her resulting injuries.  After reviewing the contents of the 
letter for relevancy, the trial court admitted the letter into evidence.  
In the letter, Reed describes his sexual encounter with K.B., claiming that he 
did not sexually assault K.B., nor did he have to do so because he ”was 
getting to[o] much” from other sources.  While he admits that sexual 
intercourse occurred, he states that K.B. “gave it up and [that] she lied 
about her age.”  He also states that K.B. tried to hurt him and to stab 
him, so he defended himself.
        Prior 
to the introduction of Exhibit 49 into evidence, Reed provided testimony 
consistent with several statements contained in the letter.  For example, 
Reed admitted that he and K.B. engaged in consensual sex, but he indicated that 
she told him she was seventeen years old at the time of the sexual 
encounter.  He also testified that after K.B. became upset with him and 
came at him with a knife, he felt threatened and stabbed her in 
self-defense.  Because Reed testified prior to the introduction of the 
letter in a manner consistent with his statements in the letter concerning the 
nature of his sexual encounter with K.B. and her resulting injuries, 
introduction of Exhibit 49 did not have the tendency to make Reed’s guilt of 
the charged offense more or less probable than it would be without the 
evidence.  Thus, based on our review of the record, it appears that Exhibit 
49 was not relevant to any issue apart from its tendency to prove Reed’s 
promiscuous sexual conduct around the time of his sexual encounter with K.B.  
See Tex. R. Evid. 
404.  As a result, we hold that the trial court abused its discretion by 
admitting State’s Exhibit 49 into evidence.
        Having 
found error, we must conduct a harm analysis to determine whether the error 
calls for reversal of the judgment.  See Tex. R. App. P. 44.2.  Error under 
the rules of evidence in the admission of evidence constitutes nonconstitutional 
error.  See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 
1998).  A reviewing court is to disregard nonconstitutional error that does 
not affect the substantial rights of the defendant.  Tex. R. App. P. 44.2(b).  In making 
this determination, we review the record as a whole.  Kotteakos v. 
United States, 328 U.S. 750, 764-65, 66 S. Ct. 1239, 1248 (1946).
        In 
the instant case, a substantial portion of Exhibit 49 corroborated Reed’s 
testimony at trial and was exculpatory in that it was consistent with his claims 
that K.B.’s injuries resulted from self-defense.  At trial, the State did 
not continually emphasize Reed’s promiscuous sexual conduct, nor did it rely 
on any statements from Exhibit 49 during argument.  In fact, the State only 
referenced the contents of the letter after Reed objected to its admissibility 
and immediately after its admission into evidence.
        In 
addition, there was overwhelming evidence of Reed’s guilt to the charged 
offenses.  Specifically, the trial court heard testimony that Reed 
violently sexually assaulted a fourteen-year-old girl, forced her to touch him, 
stabbed her as she was lying on the ground, and attempted to both strangle and 
drown her.  Thus, after reviewing the record as a whole, we are unpersuaded 
that the trial court’s admission of Exhibit 49 affected Reed’s substantial 
rights.  See Torres v. State, 92 SW.3d 911, 919 (Tex. App.—Houston 
[14th Dist.] 2002, pet. ref’d).  Consequently, we overrule Reed’s first 
point.
        C. State’s Exhibits 57 and 58
        In 
his third and fourth points, Reed contends that the trial court erred by 
admitting into evidence State’s Exhibits 57 and 58, two written statements 
made by Reed after he was taken into custody, because both statements were 
involuntary. The State maintains that Reed voluntarily made both written 
statements after he was arrested and properly advised of his rights.
        With 
respect to State’s Exhibit 57, Reed complains that this written statement was 
involuntary because he agreed to give this statement “while he was lying on 
the ground, handcuffed, in the pouring rain, and surrounded by armed police 
officers.”  When the State attempted to introduce Exhibit 57 into 
evidence at trial, Reed objected on the basis that the statement was 
involuntarily made.  The trial court held a Jackson v. Denno[1] hearing and determined that the statement “was made 
under voluntary conditions” after Reed was properly advised of his Miranda[2] rights and agreed to waive them.
        During 
the hearing, Detective Cory Ulmer, a police officer for the City of Fort Worth 
and the lead officer in Reed’s case, testified as the sole witness regarding 
the facts and circumstances surrounding Reed’s arrest and his custodial 
written statements.  Detective Ulmer testified that on December 15, 2001, 
after K.B. identified Reed as her assailant, he obtained an arrest warrant for 
Reed for attempted capital murder.  Detective Ulmer and his arrest team 
then went to Reed’s residence to take Reed into custody.  According to 
the detective, when they arrived at Reed’s residence, it was raining very 
heavily.  As Detective Ulmer knocked on Reed’s front door, Reed attempted 
to leave the premises by using the back door.  Three officers immediately 
grabbed Reed to try to arrest him, but Reed struggled with the officers by 
pulling his arms away from them.  Reed was eventually taken to the ground 
and handcuffed.  After the officers gained control of Reed, Detective Ulmer 
informed Reed that he was under arrest, advised him of his Miranda 
rights, and asked him if he would like to talk about the incident involving K.B.  
Reed agreed to discuss the incident with Detective Ulmer and was transported to 
Detective Ulmer’s office in a marked law enforcement vehicle.
        Upon 
arrival, Reed was taken to an interview room by another officer.  At 
approximately 11:00 p.m., Detective Ulmer joined Reed in the interview room, 
removed Reed’s handcuffs, and once again advised him of his rights.  
After Reed waived his rights and signed a form indicating his intention to do 
so, Detective Ulmer began questioning him about what had transpired between 
himself and K.B.  At first, Reed denied any knowledge of the incident, but 
when Detective Ulmer challenged this assertion and informed Reed that this was 
his opportunity to tell his side of the story, Reed began discussing his 
encounter with K.B.  During this time, Reed told Detective Ulmer that after 
he and K.B. had consensual sex, she became angry and pulled a knife on him, and 
he retaliated in self-defense.  At approximately 11:40 p.m., Reed agreed to 
provide a written statement detailing the incident involving K.B.  He then 
filled out a statement form, waiving his rights and describing the events 
surrounding his encounter with K.B.
        At 
the hearing, Detective Ulmer testified that he and Reed were the only persons 
present in the interview room when Reed made his statement; however, he 
indicated that he did not threaten or coerce Reed into making it.  He also 
testified that, although the door to the interview room was shut, he offered 
Reed the opportunity to leave the room to use the restroom or to get a drink of 
water.  According to Detective Ulmer, he believed that Reed voluntarily 
made his first written statement after intelligently and knowingly waiving his 
rights.
        The 
trial court is the sole judge of the weight and credibility of the witnesses’ 
testimony at a Jackson v. Denno hearing and may choose to believe or 
disbelieve any or all of such testimony.  Dewberry v. State, 4 
S.W.3d 735, 747-48 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 
(2000).  Accordingly, we may not disturb any finding that is supported by 
the record. Id. In the instant case, the trial court found, based on 
Detective Ulmer’s testimony, that Reed’s first written statement was 
voluntary.  Because our review of the record supports this finding, we hold 
that the trial court did not abuse its discretion by admitting State’s Exhibit 
57 into evidence.  See Sells v. State, 121 S.W.3d 748, 767 (Tex. 
Crim. App.), cert. denied, 124 S. Ct. 511 (2003).  We overrule 
Reed’s third point.
        With 
respect to State’s Exhibit 58, Reed argues that this statement was 
“irredeemably tainted by [his] first” statement, State’s Exhibit 57.  
On December 18, 2001, three days after Reed was arrested and made his initial 
statement, Detective Ulmer went to see Reed at the Mansfield Law Enforcement 
Center to gather further information regarding the incident involving Reed and 
K.B.  Detective Ulmer first inquired as to whether Reed was represented by 
an attorney, and Reed told him that he was not. Detective Ulmer then advised 
Reed of his rights, and Reed agreed to waive them.  According to Detective 
Ulmer, Reed was eager to give a second statement because he did not believe his 
first statement was favorable to him.  Although Reed requested that his 
first written statement be destroyed, Detective Ulmer told him that he could not 
destroy it.  But Detective Ulmer advised Reed that he could set his first 
statement straight by providing an additional statement.  Thereafter, Reed 
provided a second written statement.
        During 
the hearing, Reed objected to the admission of State’s Exhibit 58 on the basis 
of the voluntariness of the statement.  Considering the testimony provided 
by Detective Ulmer, the trial court found that the statement was voluntarily 
made and admitted State’s Exhibit 58 into evidence.  Because this finding 
is supported by the record, we hold that the trial court did not abuse its 
discretion by admitting State’s Exhibit 58 into evidence.  See id.  
Consequently, we overrule Reed’s fourth point.
        D. State’s Exhibit 73
        In 
his fifth point, Reed contends that the trial court erred by admitting State’s 
Exhibit 73, a photocopy of a plexiglass shank, into evidence at the punishment 
phase of trial because it was not relevant, nor was it ever conclusively linked 
to Reed.  The State maintains that State’s Exhibit 73 was properly 
identified as a photocopy of the plexiglass shank found in Reed’s possession 
and was relevant to sentencing.
        During 
punishment, the State called Officer Kevin Miller, a jailer with the Tarrant 
County Sheriff’s Department, to testify regarding Reed’s possession of a 
prohibited weapon inside the Tarrant County Corrections Center.  According 
to Officer Miller, on May 12, 2002, he performed a shakedown search of the jail 
cells within Reed’s cell block because a plexiglass window on the cell across 
from Reed’s cell broke during an altercation the previous day, and some pieces 
of plexiglass were believed to be in the possession of inmates in the 
neighboring cells.  While searching Reed’s cell, Officer Miller 
discovered a six-inch piece of plexiglass inside a leather domino pouch.  
After Officer Miller recovered the plexiglass shank from Reed’s cell, he 
photocopied the weapon in accordance with department policy.  He then 
placed the photocopy of the plexiglass shank in the files at the sheriff’s 
department as a record of the item found in Reed’s cell.  Officer Miller 
testified that the plexiglass shank found in Reed’s cell was capable of 
causing death or serious bodily injury, and therefore, was prohibited under the 
Correction Center’s rules.  Consequently, after a disciplinary hearing 
regarding Reed’s possession of the plexiglass shank, Reed was placed on thirty 
days’ restriction in the Correction Center.
        Prior 
to trial, the State provided Reed with notice of its intent to offer evidence 
related to his disciplinary infraction of possessing the plexiglass shank.  
At the punishment phase of trial, Reed objected to the admission of State’s 
Exhibit 73 on the basis of relevance.  The trial court overruled his 
objection and admitted the exhibit into evidence.
        The 
Texas Code of Criminal Procedure permits a trial court to admit evidence “as 
to any matter the court deems relevant to sentencing,” including evidence 
arising after the offense. Tex. Code Crim. Proc. Ann. art. 37.07, 
§ 3(a)(1) (Vernon Supp. 2004); see Contreras v. State, 59 S.W.3d 362, 
365 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  Evidence is deemed 
relevant during the punishment phase of trial if it assists the fact finder in 
determining the appropriate sentence given the particular defendant in the 
circumstances presented.  Rogers v. State, 991 S.W.2d 263, 265 (Tex. 
Crim. App. 1999).  Accordingly, the trial court has broad discretion in 
determining the admissibility of evidence during the punishment phase of 
trial.  Cooks v. State, 844 S.W.2d 697, 735 (Tex. Crim. App. 1992), cert. 
denied, 509 U.S. 927 (1993).
        Given 
the violent nature of the offenses that Reed was found guilty of committing, 
evidence proving his possession of the plexiglass shank, a prohibited weapon, 
after his incarceration would be helpful to the trial court’s determination of 
the appropriate sentence in this case.  In addition, although Reed 
complains that Exhibit 73 was not relevant because Officer Miller “never 
identified it as being a copy of the ‘shank’ found in [his] cell,” Officer 
Miller indicated that the plexiglass shank depicted in State’s Exhibit 73 was 
found in a domino pouch in Reed’s cell and that the photocopy of the 
plexiglass shank was placed in the department’s files as a record of the 
disciplinary infraction.  Officer Miller testified that Reed was the only 
person with access to his cell because it was a single cell unit that was locked 
down for twenty-three hours a day.  Consequently, because the domino pouch 
and the enclosed plexiglass shank were discovered in Reed’s cell, a sufficient 
connection existed demonstrating Reed’s possession of the plexiglass shank and 
rendering the plexiglass shank relevant to sentencing.  See Soria v. 
State, 933 S.W.2d 46, 60 (Tex. Crim. App. 1996) (op. on reh’g) (holding 
that drawing of defendant holding bloody knife found in defendant’s cell was 
sufficient connection to render the drawing relevant to sentencing), cert. 
denied, 520 U.S. 1253 (1997).  Accordingly, we overrule Reed’s fifth 
point.
IV. Article 
38.22 Satisfied
        In 
his second point, Reed contends that this court erred by failing to abate this 
appeal to require written findings regarding the voluntariness of his statements 
as dictated under article 38.22 of the code of criminal procedure.  The 
State argues that this court’s denial of Reed’s motion to abate was proper 
because the trial court’s specific oral findings, transcribed and made part of 
the record on appeal, satisfied the requirements of article 38.22.  We 
agree.
        In 
all cases where a question is raised concerning the voluntariness of a statement 
of an accused, the code of criminal procedure requires a trial court to enter a 
written order stating its conclusion as to whether or not the statement was 
voluntarily made and setting forth the specific findings on which its conclusion 
is based. Tex. Code Crim. Proc. Ann. art. 38.22, 
§ 6 (Vernon Supp. 2004).  Nonetheless, a trial court satisfies the 
requirements of article 38.22 when it dictates its findings and conclusions to 
the court reporter, and they are transcribed and made a part of the statement of 
facts, filed with the district clerk and made a part of the appellate 
record.  Murphy v. State, 112 S.W.3d 592, 601-02 (Tex. Crim. App. 
2003), cert denied, 124 S. Ct. 1660 (2004); Drake v. State, 123 
S.W.3d 596, 601 (Tex. App.—Houston [14th Dist.] 2003, pet. ref’d); Blount 
v. State, 64 S.W.3d 451, 457 (Tex. App.—Texarkana 2001, no pet.); Andrade 
v. State, 6 S.W.3d 584, 592 (Tex. App.—Houston [14th Dist.] 1999, pet. 
ref’d).
        In 
the instant case, with respect to both of Reed’s written statements, Exhibits 
57 and 58, the trial court held a hearing after an issue as to voluntariness was 
raised and determined that each statement was voluntarily made.  At the 
conclusion of each hearing, the trial court dictated its findings and 
conclusions to the court reporter, clearly detailing the specific facts on which 
its conclusion was based.  The trial court’s findings and conclusions 
were transcribed and made part of the record on appeal.  Nevertheless, 
during the pendency of this appeal, Reed filed a motion to abate the appeal to 
require written findings regarding the voluntariness of his statements.  
Relying on the court of criminal appeals’ decision in Murphy, this 
court denied his motion.  112 S.W.3d at 601-02.
        The 
trial court’s specific, oral findings and conclusions on the record 
sufficiently provide the parties with a basis on which to assess the trial 
court’s ruling and enable this court to resolve the fact issues upon which the 
appellant bases his ground of error.  See Bonham v. State, 644 
S.W.2d 5, 8 (Tex. Crim. App. 1983).  Consequently, we are unpersuaded that 
our prior decision denying Reed’s motion to abate this appeal was erroneous 
because the trial court sufficiently satisfied article 38.22 by dictating its 
findings and conclusions into the record.  We overrule Reed’s second 
point.
V. Conclusion
        Having 
overruled all of Reed’s points on appeal, we affirm the trial court’s 
judgment.
  
  
                                                          SUE 
WALKER
                                                          JUSTICE
 
  
PANEL 
A:   CAYCE, C.J.; LIVINGSTON and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
June 17, 2004


NOTES
1.  
378 U.S. 368, 84 S. Ct. 1774 (1964).
2.  
Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).