COURT OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO. 2-04-509-CR

 

 

NORBERTO
RAMIREZ                                                           APPELLANT

 

                                                   V.

 

THE STATE OF
TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








Pursuant to a
search warrant, police found more than 400 grams of cocaine in a garage
attached to a house and found five handguns, three of which were loaded or in
close proximity to ammunition, in the bottom drawer of the dresser in the
northeast bedroom of the house.  They
also found more than $7,000 in cash in the same drawer.  They arrested Appellant Norberto Ramirez in
the yard outside the house.  Appellant
filed a motion to suppress his confession. 
After the trial court denied Appellant=s motion to suppress his confession, he entered an
open plea of guilty to the trial court to the offense of possession of over 400
grams of cocaine with intent to deliver. 
He pled not true to the deadly weapon allegation.  The trial court accepted the plea of guilty
and further found that Appellant used or exhibited a deadly weapon in the commission
of the offense.  The trial court
sentenced Appellant to thirty years= confinement in the Institutional Division of the
Texas Department of Criminal Justice.

Appellant brings
four points on appeal, arguing that the trial court erred by denying his motion
to suppress the statement that he gave to the police officers, that the
evidence is insufficient to support the deadly weapon finding, that he was
denied the right to testify on his own behalf regarding the deadly weapon
issue, and that the trial court erroneously admitted evidence of an extraneous
offense during the punishment phase. 
Because we hold that the evidence is legally insufficient to support the
deadly weapon finding, we modify the judgment to delete the deadly weapon
finding.  Because we hold that the trial
court did not otherwise err, we affirm the trial court=s
judgment as modified.

 








           Voluntariness
of Appellant=s Statement

In his first point,
Appellant argues that his statement to the police was involuntary because the
police failed to adequately warn him of his constitutional rights, coerced him
into giving the statement, and illegally arrested him.  Article 38.21 of the Texas Code of Criminal
Procedure provides that a statement of an accused may be used in evidence
against him if it appears that it was freely and voluntarily made without
compulsion or persuasion.[2]

Legality of the
Arrest

Appellant argued
before the trial court that the officers provided faulty information which
misled the magistrate who signed the warrant. 
Specifically, Appellant argued that the target of the search warrant was
Juan Maldonado.  He argued that the
detective signed an affidavit in support of the warrant and that the affiant
swore 

that the person that we=re looking [for] is one Juan Luis Maldonado.  He also swore they had made an
investigation.  He identified the
subject, the search of this warrant, and the point is that was strictly based
on a license check on a vehicle that was at the residence here in
question.  And that is all the
investigation that this detective did, even though he swore under oath in front
of Magistrate Judge Robert Cortez when everything was true and correct, when it
wasn=t.








He had not made a
due diligent investigation to find out where this person was, and they also
made the basis because Mr. Jose Luis Maldonado has a criminal history in
Tarrant County. . . .  They got a
no-knock approval by the Judge, assuming it was Mr. Maldonado, with a history
of assaultive offenses.  It turned out
to be totally incorrect.  Mr. Maldonado
was not involved in any of this, and I=m saying that, by itself, the Court shouldn=t
condone . . . faulty detective work like this, where they swore to something
that is false.

 

At
best, they didn=t do their homework and you don=t tell a
judge everything is true and correct to obtain a warrant, and we=ll clear
it later, or it didn=t make any difference afterwards.  So I just assumed the detective was going to
be here today.

Before any officer
testified at the hearing on the motion to suppress, the trial court noted that
the warrant authorized not only the arrest of Maldonado, but also Aothers
accused of concealing said controlled substance namely cocaine.@  The trial court found that the warrant
itself was not limited to Maldonado but also included others.  Appellant=s trial counsel stated, AI agree a hundred percent, Judge.  That is not my argument.  My argument is the faulty information that a
detective used to obtain the warrant . . . even though some of it may be true.A  At that point, the trial court announced
that it would not rule on that question but would Ahold
that until we actually bring this officer in.@








Later, Officer
Blaisdell, the affiant, testified. 
Appellant never again raised the question of the veracity of the
statements in the affidavit supporting the warrant.  The State argues that Appellant=s failure to address the issue when Officer Blaisdell
was on the stand or at any other time after the court announced that it would
not rule until evidence had been presented constitutes waiver.  Because Appellant did not give the trial
court a timely opportunity to rule on the issue, we agree that he has forfeited
this complaint.[3]

                                  Adequacy of
the Warnings








Appellant also
contends within his first point that the police failed to adequately advise him
of his constitutional rights.  Article
38.22, section 2(b) of the Texas Code of Criminal Procedure provides that no
statement by an accused as a result of custodial interrogation is admissible
unless the accused Aprior to and during the making of the statement, knowingly,
intelligently, and voluntarily waived@ the warning prescribed by subsection 2(a).[4]  Appellant argues that his waiver of his
right to remain silent was not knowingly made 
because he did not understand his rights when he agreed to waive them.      In determining the voluntariness of the
confession, we consider the totality of the circumstances.[5]  In reviewing a trial court=s ruling
on a motion to suppress, we apply a bifurcated standard of review.  We do not engage in our own factual review.[6]  We therefore give almost total deference to
the ruling of the trial court on questions of historical fact and review de
novo the trial court=s rulings on questions of law and fact that do not
turn on the evaluation of the credibility or demeanor of the witnesses.[7]








Officer Perez
testified that he read the Miranda[8]
warnings to Appellant in Spanish and that Appellant indicated that he
understood his rights and wanted to waive the right to make a statement.  When asked whether he felt compelled or
forced to sign the statement, Appellant testified, ANo,
no.  Just all I had was nervousness.@  When asked whether he was aware that he did
not have to sign a declaration, Appellant testified, AWell,
yes, they did tell me because they said we want to know something that
explained, you know, the situation.@  When asked
whether anybody had threatened him to make a statement, he also testified, AYes.@  Then he explained in response to the question
concerning how he was threatened, AThat I needed to give an explanation of what they had
found, and for me to say whatCwhat I felt because of what they found.@

He admitted that he
signed the forms with the Miranda warnings on them, that he could read
Spanish, and that he could read the warnings, but he said that he was too
nervous to understand what his rights were on the day that he signed the
statement.  He also testified that no
one had threatened him with a gun or held a gun on him while he was signing the
documents and that nobody hit him while he was signing the documents, although
they had hit him earlier.  Then he
admitted that the officer had read the rights to him, but at the hearing he
said that there were two or three things that the officer had said while he was
reading that Appellant did not believe were true.  Specifically, Appellant testified, AWell, yes, he did [read the warnings].  He read me the papers, but two or three
things that I was able to hear, that it wasn=t like that.@ Finally, the following exchange occurred,

Q.  . . .
.  He read you the warnings on State=s
Exhibit 2, correct? 

 

A.  Yes.

 

Q.  And he
asked you if you understood them, too, right?

 

A.  Yes.

 

Q.  And you
said you did understand them.  You told
him that you understood them, didn=t you?








A.  Yes.

 

. . . .

 

Q.  . . .
.  You said you understood the warning
on State=s Exhibit 2. After that you wrote the statement on
State=s Exhibit 1, correct?

 

In other words,
this State=s Exhibit 1 came after State=s
Exhibit 2?

 

A.  Well, when
I signed that, it was the final thing. 
That was it.

 

Appellant also testified that he
had only received six years of education in Mexico.

Considering the
record as a whole, we hold that the trial court did not abuse its discretion by
ruling that Appellant=s waiver of his right to remain silent was made
knowingly and that he was properly warned of his rights before signing the
statement.

Coercion








Appellant also
argues within his first point that his statement was a result of police
coercion.  Appellant relies on the
following evidence from his testimony. 
He was in the yard when the officers approached.  The officers struck him with a pry bar and
at least four officers knelt on his back and held him down for five minutes or
so before they handcuffed him.  They
then led him to a masked man dressed all in black without a visible uniform,
and that forbidding individual took the custodial statement.  Appellant testified that the police told him
that he Ashould cooperate and then that way [he] couldn=t get
punished so hard.@  Appellant
testified that when the officers were on top of him and had him handcuffed, he
was afraid.  He also testified that when
Officer Perez asked him to Atell us in your own words what happened,@ he felt
he had to do what Perez told him to do because he was afraid.  At the same time, however, Appellant
testified that he did not feel compelled or coerced to sign the statement.  He was just nervous.  He admitted that he was aware that he did
not have to sign the statement.  He
testified that they wanted him to explain the situation and that was why he
signed it.








The trial judge was
free to believe either version of Appellant=s story, in whole or in part, as well as to determine
the credibility and weight of the testimony of all the witnesses.[9]  As for the statement that Appellant Ashould
cooperate and then that way he couldn=t get punished so hard,@ if the trial judge believed that this was a promise
and that it actually had been made, it is nevertheless a vague promise, not a
specific promise, and not the kind of promise the courts have held constitutes
an inducement that overcomes the will of a person accused of a crime.[10]

Considering the
record as a whole and the applicable law, we hold that the trial court did not
err by denying Appellant=s motion to suppress the statement he signed.  We overrule Appellant=s first
point.

The Deadly Weapon Finding








In his second
point, Appellant argues that the evidence is legally insufficient to prove that
a deadly weapon was used or exhibited during the charged offense.  The issue is whether the firearms in a
dresser drawer in a bedroom inside a house were Aused@ to facilitate the possession of cocaine in the
garage.  In their briefs, both the State
and Appellant explained that in determining the sufficiency of the evidence to
support a deadly weapon finding in a possession of contraband case, courts
should consider a number of different factors, including (1) the type of
firearm involved; (2) whether the firearm was loaded; (3) whether the firearm
was stolen; (4) the proximity of the firearm to the drugs, drug paraphernalia,
drug manufacturing material, or the proceeds allegedly earned from the sell of
the drugs; (5) the accessibility of the firearm to whomever controlled the
premises; (6) the quantity of drugs involved; and (7) any evidence that might
demonstrate an alternative purpose for the presence of the firearms.[11]  Police found five firearms in a dresser
drawer in the northeast bedroom of the house that was the subject of the
warrant.  Some of the firearms were
loaded; some of them were not.  In the
same drawer, officers found $7,533 in cash. 
One of the officers, Officer Lucio, testified that he believed that the
bedroom was Appellant=s bedroom.  No
one else testified concerning whose bedroom the firearms and money were found
in.  After the State rested and closed
on the issue of the deadly weapon and after the trial court had ruled and
entered an affirmative deadly weapon finding, Officer  Blaisdell testified that he had found Appellant=s
passport in the same bedroom. 








The evidence shows
that when the officers arrived, Appellant was not inside the house.  Rather, he was outside in the yard with his
ten-year-old brother.  Officer Lucio
testified that the cocaine and Adope notes@ were found in a garage attached to the house on the
property where Appellant was located. 
At the time that the trial court made the deadly weapon finding, nothing
but Officer Lucio=s speculation connected Appellant to the bedroom.  No one other than Officer Blaisdell
testified that he or she had seen Appellant=s passport in the bedroom.  All of the drugs and all of the notes connected to the drugs were
found in the garage.

Officer Blaisdell
signed the affidavit in support of the search warrant.  The affidavit and warrant were in the record
before the trial court.  In his
affidavit, Officer Blaisdell stated under oath that Jose Luis Maldonado
possessed and controlled the cocaine in question at the house that was the
subject of the warrant.  A confidential
informant had told Officer Blaisdell that Maldonado was involved in the
distribution of cocaine and that the informant had personally observed
Maldonado in possession of and distributing cocaine from within the Dell Street
residence, which was the subject of the warrant.  Officer Blaisdell swore that he met with the confidential
informant and that the informant specifically pointed at the Dell Street
house.  Officer Blaisdell swore that he
corroborated much of the informant=s information through surveillance and independent
investigation.  He swore that he
conducted a surveillance on the Dell Street address and observed Maldonado
arrive at the residence and go inside. 
The informant also advised Officer Blaisdell that the informant had
personally been inside the Dell Street house within seventy-two hours of the
issuance of the warrant and that the informant had personally witnessed
Maldonado in possession of and selling quantities of cocaine inside the house. 








 

 

Officer Blaisdell
stated in his affidavit, ASaid residence is located in the City of Fort Worth,
Tarrant County, State of Texas which said controlled substance namely Cocaine
is possessed and under the control of Maldonado, Jose Luis . . . .@

The trial judge
stated without contradiction, AThe warrant, in fact, is made by Bruce W. Blaisdell,
who had received information from a confidential informant concerning Juan Jose
Luis Maldonado who resides at 2405 Dell Street.@

Appellant admitted
that he possessed the cocaine.  Nothing
in the record suggests that Appellant possessed the cash that was in the bureau
drawer or the firearms that were in the bureau drawer except Officer Lucio=s
speculation and Officer Blaisdell=s claim, after the trial court=s
ruling, that he found Appellant=s Mexican passport in the same room.








The house is a
small house, and the garage is attached to it. 
There is no testimony that the officers verified the ownership of the
house, the name on the utility service, or, other than Lucio=s
speculation and Officer Blaisdell=s claim of finding the passport in the northeast
bedroom, that Appellant lived at the house or was in control of the northeast
bedroom.  There is no evidence that the
firearms were stolen.  There is no
evidence about who controlled the premises other than Officer=s
Blaisdell=s sworn statement in his affidavit that Maldonado
did.  Despite the fact that more than
400 grams of cocaine was involved, neither weapons, nor contraband, nor a large
amount of cash was found on Appellant=s person. 
There is no showing of who actually possessed the firearms, although
Blaisdell stated in his affidavit that 

the confidential informant advised your affiant that
Jose L. Maldonado[ ] has bragged about shooting two people in the past.  That your affiant conducted a criminal
history check on Jose L. Maldonado and learned that in 1991, Jose L. Maldonado
was charged with two attempted murders . . . . 
Jose L. Maldonado has been arrested for assault with bodily injury, in
the past . . . . 

 

Nothing in the
record suggests that Appellant was armed on either the day in question or in
the past.  There is no evidence of a
criminal history involving firearms. 
Additionally, there is no showing that Appellant was in actual control
of the residence.  There is no showing
that Appellant actually controlled the cash. 
There is no showing of the source of the cash.  What the evidence does show is that the police found Appellant in
the yard, and he admitted possession of the contraband in the garage.

As Judge Cochran
pointed out in her Coleman concurrence, 








[T]riers of fact
and reviewing courts must look for some evidence showing that the particular
defendant=s actual or constructive possession of a deadly weapon
did, in fact, further the drug trafficking operation.  Mere presence is not enough. 
Proof showing simply the simultaneous possession of a gun and drugs does
not suffice to establish, beyond a reasonable doubt, that the gun facilitated
commission of the drug offense.[12]

In the case now
before this court, nothing shows that the firearms facilitated Appellant=s
possession of the cocaine. 
Consequently, we hold that under the limited facts of this case, the
evidence is legally insufficient to support a finding that Appellant used a
deadly weapon in the course of committing the offense of possession of more
than 400 grams of cocaine with the intent to deliver or, in Judge Cochran=s words,
legally insufficient to establish, beyond a reasonable doubt, that the firearms
facilitated Appellant=s  commission
of the drug offense.  We sustain
Appellant=s second point. 
Because of our disposition of this point, we do not reach Appellant=s third
point.[13]

Extraneous Drug Offense








In his fourth
point, Appellant contends that the trial court abused its discretion by
admitting evidence during the punishment phase concerning an extraneous offense
despite the State=s failure to prove an adequate chain of custody.  The State developed testimony showing that
Appellant had been involved in another drug-related offense six months after
the one at issue and introduced as exhibits the drugs seized in this second offense.  The officer who testified was the undercover
officer who purchased the drugs, but he was not the same officer who marked the
drugs as evidence.  Appellant objected
that no proper chain of custody was established for these drugs.  Gaps in the chain of custody generally go to
the weight and credibility of the evidence at issue, not its admissibility.[14]  We cannot say that the trial court abused
its discretion by admitting the drugs at the punishment phase of this bench
trial.  We overrule Appellant=s fourth
point.

Conclusion

Having sustained
Appellant=s second point, we modify the judgment to delete the
deadly weapon finding.  Having overruled
Appellant=s first and fourth points, we affirm the trial court=s
judgment as modified.

 

LEE ANN DAUPHINOT

JUSTICE








PANEL A:   CAYCE,
C.J.; DAUPHINOT and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 23, 2006











[1]See Tex. R. App. P. 47.4.





[2]Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 2005).





[3]See Tex. R. App. P. 33.1(a); Mendez v.
State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004); Mosley v. State,
983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).





[4]Tex. Code Crim. Proc. Ann. art. 38.22, ' 2(b) (Vernon 2005) (emphasis added).





[5]Arizona v. Fulminate, 499 U.S. 279, 285, 111 S. Ct. 1246, 1251 (1991); Wyatt v. State,
23 S.W.3d 18, 23 (Tex. Crim. App. 2000).





[6]Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).





[7]Johnson v. State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002).





[8]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).





[9]See State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).





[10]See Martinez v. State, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004); see
also Drake v. State, 123 S.W.3d 596, 603 (Tex. App.CHouston
[14th Dist.] 2003, pet. ref=d).





[11]Coleman v. State, 145 S.W.3d 649, 658-60 (Tex. Crim. App. 2004) (Cochran, J.,
concurring).





[12]Id. at 660
(Cochran, J., concurring).





[13]See Tex. R. App. P. 47.1.





[14]Lagrone v. State, 942 S.W.2d 602, 617 (Tex. Crim. App.), cert. denied, 522 U.S.
917 (1997).