

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00211-CR
No. 02-24-00212-CR
_____

ANDREW NEIL FOX, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 4
Tarrant County, Texas
Trial Court No. 1821068, 1821069

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Andrew Neil Fox appeals his convictions for unlawfully possessing a firearm and manufacturing or delivering between 4 and 200 grams of methamphetamine. *See* Tex. Penal Code Ann. § 46.04(a); Tex. Health & Safety Code Ann. § 481.112(a), (d). On appeal, Fox argues in a single point that the trial court erred by overruling his motion to suppress certain recorded statements that he made during a custodial interrogation. We affirm.

## I. BACKGROUND

In 2023, Fort Worth Police Officer Dewayne Lee began investigating Fox for drug trafficking. After discovering that Fox was selling methamphetamine out of a motel room in northwest Fort Worth, Officer Lee organized a "controlled buy" during which a confidential informant would use marked cash to purchase methamphetamine from Fox. After the purchase was completed, Officer Lee set up surveillance and obtained a search warrant for Fox's motel room.

While under surveillance, Fox left his motel room and got into the back seat of a white SUV. Multiple officers followed the white SUV to the drive-thru lane of a nearby restaurant. Fox was removed from the vehicle and arrested.

After Fox was arrested, officers instructed the driver of the white SUV to pull into a parking spot. After obtaining the driver's and the front-seat passenger's consent to search the vehicle, officers discovered a clear plastic baggie containing a

2

substance that appeared to be methamphetamine on the floorboard behind the driver's seat.

While the white SUV was being followed, other officers stayed behind at the motel to search Fox's room. While searching the room, officers found two bags of methamphetamine,[1] marijuana, a firearm in a holster, and a small bag of cocaine.

Officer Lee and Officer Steve Smith interviewed Fox after he was taken back to the motel in police custody. After being advised of his *Miranda* rights,[2] Fox indicated that he understood them. Nevertheless, he agreed to speak with the police. Although Fox initially denied having any knowledge of the narcotics found in the SUV or in his motel room, he ultimately admitted that the methamphetamine and the gun recovered from the motel room belonged to him. He also admitted that he had planned to sell methamphetamine to the other occupants of the white SUV.

Fox was indicted for unlawful possession of a firearm and manufacturing or delivering between 4 and 200 grams of methamphetamine.[3] During trial, Fox moved to suppress the statements that he had made during his custodial interview. At the hearing on his motion to suppress, Fox argued that his statements were involuntary

---

[1]Laboratory tests confirmed that these bags contained methamphetamine. One bag contained 27.957 grams; the other bag contained 22.794 grams.

[2]*See Miranda v. Arizona*, 384 U.S. 436, 444–45, 86 S. Ct. 1602, 1612 (1966).

[3]Both indictments included a habitual-offender paragraph alleging that Fox had two prior felony convictions.

because he was under the influence of methamphetamine at the time of the interview and because Officer Smith had threatened him with federal prosecution if he did not cooperate. Having observed Fox's "demeanor, vocal cadence, and appearance" both on the witness stand at the hearing and during the recorded custodial interview, the trial court found that Fox had "knowingly, intelligently, and voluntarily waived his rights" and that he had presented no credible evidence that he "was high or otherwise intoxicated at the time of the custodial interview." Based on these findings, the trial court denied Fox's motion to suppress.

After the presentation of evidence, a jury found Fox guilty of both charged offenses. Following a punishment hearing, the trial court found the indictments' habitual-offender paragraphs to be true and sentenced Fox to 25 years in prison for the unlawful possession of a firearm offense and to 75 years in prison for the manufacturing or delivering methamphetamine offense. This appeal followed.

## II. DISCUSSION

In his sole point, Fox argues that the trial court erred by denying his motion to suppress the statements that he made during his custodial interview because the statements were involuntary. We will affirm.

### A. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). Because the trial judge is the sole trier of fact and judge of the witnesses' credibility

4

and the weight to be given their testimony, *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007), we defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor, *Martinez*, 570 S.W.3d at 281. Whether a statement was made voluntarily is an application-of-law-to-fact question that we review in the light most favorable to the trial court's ruling. *State v. Lujan*, 634 S.W.3d 862, 865–66 (Tex. Crim. App. 2021).

When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). Regardless of whether the motion was granted or denied, the prevailing party must be afforded the "strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *See State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). But we review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

**B. Applicable Law Regarding the Admission of Custodial Statements**

Article 38.22, Section 3(a)(2) of the Texas Code of Criminal Procedure prohibits the admission of any oral statement made by an accused during custodial

interrogation unless certain conditions are met. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2). As relevant here, the accused must be warned of his *Miranda* rights "prior to the statement" and must "knowingly, intelligently, and voluntarily" waive these rights. *Id.* "The required order is to warn first, waive second, and confess third." *Lujan*, 634 S.W.3d at 865. The State has the burden of proving by a preponderance of the evidence not only that the accused was advised of his rights but also that he knowingly, intelligently, and voluntarily waived them. *See Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). Only "warned and waived" custodial statements are admissible in evidence. *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex. Crim. App. 2008).

To qualify as knowing, intelligent, and voluntary, a waiver must satisfy two distinct requirements: "[i]t must be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception,'" and it must be "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Lujan*, 634 S.W.3d at 865 (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 382–83, 130 S. Ct. 2250, 2260 (2010)). "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Joseph*, 309 S.W.3d at 25 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986)). "The 'totality-of-the-circumstances approach' requires the consideration of 'all the circumstances surrounding the interrogation,'

6

including the defendant's experience, background, and conduct." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2572 (1979)).

"Before it may be said that a waiver of a *Miranda* right is involuntary, . . . there must be some element of official intimidation, coercion, or deception." *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). As to the requirement that the waiver also be knowing and intelligent, "[o]nce it is determined that a suspect[] . . . at all times knew he could stand mute . . . and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Id.* (quoting *Burbine*, 475 U.S. at 422–23, 106 S. Ct. at 1141. Thus, if "the accused has been made aware, and fully comprehends, that he has the right to remain silent in the face of police interrogation and to discontinue the dialogue at any time, and that the consequence of his waiver is that his words may be used against him later in a court of law," his waiver is knowing and intelligent. *Id.* at 350.

## C. Analysis

Fox asserts that his custodial statements admitting that he owned the methamphetamine and the gun and that he had planned to sell methamphetamine to the other occupants of the white SUV were inadmissible because he had used methamphetamine earlier that day and because Officer Smith purportedly threatened him with federal prosecution if he did not cooperate. According to Fox, these factors rendered his statement involuntary. We disagree.

7

The only evidence of Fox's supposed intoxication during his custodial interview was his own testimony, which the trial court determined was not credible. Indeed, after observing Fox's "demeanor, vocal cadence, and appearance" during his custodial interview and on the witness stand, the trial court found that there was "no evidence" that Fox had been intoxicated during the interview, and we must give almost total deference to this finding. *See Martinez*, 570 S.W.3d at 281. Further, intoxication by itself does not render a custodial interview involuntary. *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996). Because the record reflects that Fox appeared coherent and responsive during the course of the interview, the trial court was free to determine that Fox's supposed intoxication did not render his statements involuntary. *See Jones*, 944 S.W.2d at 651 (holding that defendant's statement was not rendered involuntary when defendant testified he was drunk at time of his arrest, but interrogating officers testified that he did not appear intoxicated, had normal speech and mannerisms, and did not smell of alcohol at time of his interview); *Paolilla v. State*, 342 S.W.3d 783, 792–93 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding that defendant's statement was not involuntary due to drugs or withdrawal from heroin because, even if she was under influence of heroin, she did not appear intoxicated, she was oriented to her surroundings, her responses were "calculated," and she was "conscious and alert").

Regarding Officer Smith's comments that Fox could be federally prosecuted if he did not cooperate, we cannot conclude that this conduct was so coercive that it

8

overcame Fox's free will. Before the interview, Officer Lee advised Fox of his *Miranda* rights, and Fox indicated that he understood them. During the interview, Officers Smith and Lee never yelled at Fox, never physically threatened him, and never made an improper statement of the law. Nor does Fox allege that the officers engaged in any such conduct. Thus, considering Officer Smith's statements about Fox's potential federal prosecution in context and in light of all the surrounding circumstances, we cannot conclude that they were of such a coercive or threatening nature as to render Fox's admissions involuntary. *See Alba v. State*, No. 03-04-00271-CR, 2006 WL 3452643, at *2–3 (Tex. App.—Austin Nov. 29, 2006, no pet.) (mem. op., not designated for publication) (holding that the record supported trial court's finding that appellant's confession was made voluntarily despite police officers' coercive statements that, among other things, "[they were] going to do everything [they could] to [appellant]—to make sure the court punishe[d] [him] to the fullest extent" if he did not confess because the officers "never yelled at [appellant], never physically threatened him, and never made an improper statement of the law"); *cf. Drake v. State*, 123 S.W.3d 596, 603 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("[G]eneral statements about how a confession might result in more lenient treatment will not invalidate the confession.").

In sum, considering the totality of the circumstances,[4] *see Joseph*, 309 S.W.3d at 25, and giving due deference to the trial court's factual determinations, *Martinez*, 570 S.W.3d at 281, we cannot conclude that the trial court erred by denying Fox's motion to suppress his custodial statements on the grounds that they were involuntary.

We overrule Fox's sole point.

### III. CONCLUSION

Having overruled Fox's sole point, we affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 24, 2025

---

[4]In his briefing, Fox points to his purportedly "being violently assaulted" by Officer Andre Towns when he was arrested and his not being given the opportunity to speak with any family or friends before his custodial interview as additional circumstances showing that his admissions were involuntary. But while the trial court determined that Officer Towns improperly removed Fox from the white SUV before probable cause was established and excluded Officer Towns's body-camera footage on that basis, the record does not support Fox's claim that Officer Towns "violently assaulted" him. Further, nothing in the record reflects that Fox asked to speak with any family members or friends before his custodial interview. *See Ozuna v. State*, No. 05-05-01499-CR, 2006 WL 3411107, at *3 (Tex. App.—Dallas Nov. 28, 2006) (not designated for publication) (overruling appellant's challenge to trial court's denial of his motion to suppress custodial statements on the grounds that they were involuntary and noting that "[a]lthough [appellant] complain[ed] he was not allowed to leave the room or call his family, nothing in the record reflect[ed] he requested to do so"). Thus, these additional circumstances identified by Fox do not support his claim that his custodial statements were involuntary.

10